STATE FARM FIRE & CASUALTY CO., Appellant in No. 08–2220

v.

The ESTATE OF Thomas W. MEHLMAN; William F. Mehlman, Executor of the Estate of Thomas Mehlman; Maria Iacono.

State Farm Fire & Casualty Co.

v.

Estate of Thomas W. Mehlman; William F. Mehlman, Executor of the Estate of Thomas Mehlman; Maria Iacono

Maria Iacono, Appellant in No. 08–2261.

State Farm Fire & Casualty Co.

v.

Estate of Thomas W. Mehlman; William F. Mehlman, Executor of the Estate of Thomas Mehlman; Maria Iacono

The Estate of Thomas W. Mehlman and William F. Mehlman, Appellants in No. 08–2262.

Nos. 08–2220, 08–2261, 08–2262.

United States Court of Appeals, Third Circuit.

Argued Nov. 3, 2009.

Filed: Dec. 16, 2009.

Eric R. Brown, John J. Hare (argued), Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, PA, Attorneys for Appellant–Cross–Appellee, State Farm Fire & Casualty Co.

Mark E. Lovett (argued), Hartman, Underhill & Brubaker, Lancaster, PA, Attorneys for Appellee–Cross–Appellants, William F. Mehlman and Estate of Thomas W. Mehlman.

Brian P. Kelly, Joseph L. Messa, Jr. (argued), Messa & Associates, Philadelphia, PA, Attorneys for Appellee–Cross–Appellant, Maria Iacono.

BEFORE: SCIRICA, Chief Judge, and JORDAN and GREENBERG, Circuit Judges.

OPINION OF THE COURT

GREENBERG, Circuit Judge.

## I. INTRODUCTION

This matter comes on before this Court on an appeal and cross-appeals from a final order of the District Court dated March 27, 2008, and entered March 28, 2008, in a declaratory judgment action initiated by the State Farm Fire & Casualty Company.[1] *See State Farm Fire & Cas. Co. v. Estate of Mehlman,* 2008 WL 863969 (E.D.Pa. Mar.28, 2008) (*"State Farm"*). Both the District Court and this Court have been asked to decide whether two insurance policies, the "Homeowners Policy" and the "Umbrella Policy," that Dr. Thomas W. Mehlman purchased from State Farm required it to defend or indemnify Mehlman's estate and its executor, William F. Mehlman (collectively, "the

Mehlman Estate"), in an action that Maria Iacono brought against them (the "Underlying Action").

In the order from which the parties have appealed and cross-appealed, the District Court granted in part and denied in part their respective cross-motions for summary judgment, as it concluded that State Farm did not have a duty to defend or indemnify the Mehlman Estate under the Homeowners Policy, but that it did have the duty to defend but not necessarily indemnify the Mehlman Estate under the Umbrella Policy. State Farm appeals from the portion of the District Court's order holding that it has a duty to defend the Mehlman Estate under the Umbrella Policy, and Iacono and the Mehlman Estate cross-appeal from the portion of the order holding that State Farm does not have a duty to defend or indemnify the Mehlman Estate under the Homeowners Policy. *Id.* at *8.

The dispositive question in this Court is whether Mehlman's alleged drunkenness on the afternoon of March 5, 2005, may have rendered "accidental" under Pennsylvania law, which the parties agree is applicable, his attempts to shoot and possibly kill Iacono, for unless they did so, State Farm did not have a duty to defend or indemnify the Mehlman Estate under either policy.[2] Because we answer this question in the negative, we hold that State Farm does not owe a duty under either policy to defend or indemnify the Mehlman Estate in the Underlying Action. Accordingly, we will affirm in part and will

---

1. We refer to the appeals as do the parties as an "appeal" and "cross-appeals" in accordance with the order of the docket numbers assigned in this Court. Actually all the parties appealed at about the same time.

2. Inasmuch as Pennsylvania law governs this action we treat Pennsylvania Supreme Court opinions as binding precedent and Pennsylvania Superior Court opinions as persuasive precedent. *See Jewelcor Inc. v. Karfunkel,* 517 F.3d 672, 676 n. 4 (3d Cir.2008).

reverse in part the order of the District Court and will remand the case to the District Court for entry of judgment in State Farm's favor.

## II. BACKGROUND

### A. The Events of March 5, 2005

The events giving rise to this dispute are tragic and bizarre.[3] On the afternoon of March 5, 2005, Mehlman entered Ristorante La Locanda in Edgemont, Pennsylvania, and began drinking at the restaurant's bar. After consuming a number of alcoholic drinks within a short time, Mehlman became visibly intoxicated and cognitively impaired. He then left the restaurant, and, at approximately 4:30 p.m., walked one and one-half miles to the residence owned by his girlfriend or former girlfriend Phyllis Sauter. Iacono was present at Sauter's residence because she resided in a suite that she rented on its second floor. When Mehlman went to Sauter's residence he brought a backpack containing a .45 caliber handgun. Upon arriving at Sauter's residence, Mehlman let himself in, and upon encountering Iacono, asked to see Sauter. Iacono explained that Sauter was in Colorado, but Mehlman became increasingly agitated and aggressive, threatening Iacono with loud, abusive language, and demanding to see Sauter. After Mehlman refused Iacono's requests to leave, Iacono left the house and walked toward her car.

As Iacono entered her car and prepared to leave, Mehlman, now armed with the handgun, approached Iacono's vehicle in a rage, raised his gun, aimed the weapon at Iacono's head, and pulled the trigger, but the gun did not discharge. Iacono attempted to flee, but was unsuccessful as she stalled her car and then crashed it into a tree as she tried to drive away. Mehlman then jumped up on the front of Iacono's car, laid his body flat on the hood, aimed his gun at Iacono's head through the front windshield, and pulled the trigger. The gun, however, again misfired. Mehlman, undeterred, then approached the passenger side of Iacono's car, attempted to break the passenger-side window with his elbow, and for a third time tried to shoot Iacono but the gun again misfired. When Iacono finally escaped and drove away, Mehlman chased after her and fired at least one shot in the direction of her vehicle but fortunately his shot or shots missed.

Mehlman then returned to Sauter's residence and went inside. Shortly thereafter, police arrived and attempted to negotiate Mehlman's surrender. At approximately 11:30 p.m., a SWAT team entered the residence and found Mehlman dead. A police report indicated that he died from a self-inflicted gunshot wound to his head, and placed the time of death at approximately 5:00 p.m. According to a toxicology report, Mehlman's blood-alcohol level at the time the police found his body was 0.21 percent. Mehlman did not ingest any alcohol between the time he left Ristorante La Locanda and the time of his death.[4]

*Ins. Co. v. Baumhammers,* 595 Pa. 147, 938 A.2d 286, 290–91 (2007).

---

3. We base our factual recitation solely on the allegations in Iacono's amended complaint in the Underlying Action, even though there was discovery in this coverage case in which more germane facts may have surfaced, because an insurer's duty to defend an action against its insured is initially measured on the basis of the allegations of the pleadings in the complaint against the insured. *See Donegal Mut.*

4. Though Iacono makes the allegation which we accept on this appeal that Mehlman did not consume any alcohol after he left the restaurant, we cannot help but wonder how she could know that Mehlman did not drink any alcoholic beverage after he returned to

## B. The Insurance Policies

Mehlman's Homeowners Policy provides $500,000 in liability coverage "[i]f a claim is made or a suit is brought against an insured for damages because of bodily injury ... caused by an occurrence."[5] App. at 22. The policy defines "bodily injury" as "physical injury, sickness, or disease to a person," but states that "bodily injury does not include ... emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person." *Id.* at *8. The policy defines an "occurrence" as "an accident, including exposure to conditions, which results in" bodily injury. *Id.* at *9. The Homeowners Policy further limits coverage because it contains an exclusion that states that it does not provide coverage for bodily injury "(1) which is either expected or intended by the insured; or (2) which is the result of willful and malicious acts of the insured." *Id.* at *23.

Mehlman's Umbrella Policy provides $1,000,000 in liability coverage if an insured is "legally obligated to pay damages for a loss." *Id.* at *51. The policy defines "loss" as "an accident that results in personal injury" which it defines as "bodily harm, sickness, disease, shock, mental anguish or mental injury." *Id.* at *49–50. In a provision that parallels the Homeowners Policy, the Umbrella Policy excludes from its coverage personal injury "which is either expected or intended" by the insured, or which was a result of the insured's "willful and malicious act, no matter at whom the act was directed." *Id.* at *52.

## C. Procedural History

Iacono brought the Underlying Action in the Court of Common Pleas of Delaware County, Pennsylvania, on November 14, 2005, against the Mehlman Estate and other defendants with whom we are not concerned on this appeal, seeking compensation for injuries she claimed to have suffered by reason of Mehlman's actions. In her amended complaint, Iacono set forth four counts against the Mehlman Estate: (1) intentional infliction of emotional distress; (2) negligent infliction of emotional distress; (3) assault with a firearm; and (4) negligence.[6] Upon receipt of the lawsuit, the Mehlman Estate demanded a defense and indemnification from State Farm pursuant to the Homeowners Policy and the Umbrella Policy. *See State Farm,* 2008 WL 863969, at *2. State Farm retained counsel to defend the Mehlman Estate but did so subject to a reservation of rights that would allow it to disclaim coverage later.

State Farm then brought a declaratory judgment action in the Court of Common Pleas of Lancaster County, Pennsylvania, against the Mehlman Estate and Iacono to determine whether it owed a duty to defend or indemnify the Mehlman Estate in the Underlying Action, but Iacono removed State Farm's action to the District Court. Following discovery, the parties filed cross-motions for summary judgment, with State Farm seeking a declaration that it did not owe a duty to defend or indemnify the Mehlman Estate under either policy in the Underlying Action, and with the

---

the Sauter residence following Iacono's escape.

5. Though the Homeowners Policy and the Umbrella Policy provide coverage for "property damage" in addition to "bodily injury," inasmuch as neither Iacono nor the Mehlman

Estate rely on the property damage provisions of the policies to provide coverage for the Estate in the Underlying Action, we do not address them further.

6. The complaint also includes a claim for punitive damages in a separate count.

Mehlman Estate and Iacono seeking a declaration that State Farm owed those duties under both policies.

In a Memorandum Opinion and Order dated March 27, 2008, and entered March 28, 2008, the District Court granted in part and denied in part each party's motion for summary judgment, as it concluded that State Farm did not have a duty to defend or indemnify the Mehlman Estate under the Homeowners Policy because Iacono's alleged injuries did not constitute "bodily injury" as defined in that policy, *State Farm*, 2008 WL 863969, at *4, but that State Farm did have a duty to defend the Mehlman Estate under the Umbrella Policy "at least until such time as the factual record can show that Dr. Mehlman's purported state of intoxication did not negate any intent on his part." *Id.* at *8. The appeal and cross-appeals followed.

### III. JURISDICTION AND STANDARD OF REVIEW

The District Court had subject matter jurisdiction in this diversity of citizenship action pursuant to 28 U.S.C. §§ 1332 and 1441, and we have jurisdiction to review the final order of the District Court pursuant to 28 U.S.C. § 1291. We exercise plenary review of a district court's final decision resolving cross-motions for summary judgment. *Startzell v. City of Philadelphia*, 533 F.3d 183, 192 (3d Cir.2008). We review a district court's interpretation and prediction of state law, in this case Pennsylvania law, *de novo*. *Koppers Co. v. Aetna Cas. and Sur. Co.*, 98 F.3d 1440, 1445 (3d Cir.1996).

### IV. DISCUSSION

■■■ In determining whether State Farm owes a duty to defend or indemnify the Mehlman Estate in the Underlying Action, we examine the allegations in Iaco-

no's amended complaint in the Underlying Action and the language of the insurance policies that Mehlman purchased from State Farm:

> [A]n insurer's duty to defend an action against the insured is measured, in the first instance, by the allegations in the plaintiff's pleadings.... In determining the duty to defend, the complaint claiming damages must be compared to the policy and a determination made as to whether, if the allegations are sustained, the insurer would be required to pay [the] resulting judgment.... [T]he language of the policy and the allegations of the complaint must be construed together to determine the insurer['s] obligation.

*Donegal Mut. Ins. Co. v. Baumhammers*, 595 Pa. 147, 938 A.2d 286, 290 (2007) (quoting *Gene's Restaurant, Inc. v. Nationwide Ins. Co.*, 519 Pa. 306, 548 A.2d 246, 247 (1988)). Accordingly, we first consider whether either the Homeowners Policy or the Umbrella Policy affirmatively provides for coverage against the claims in Iacono's amended complaint.

The Homeowners Policy provides coverage only for damages caused by an "occurrence," and the Umbrella Policy similarly limits coverage to damages caused by a "loss." The policies define "occurrence" and "loss" as accidents. Therefore, if Mehlman's actions on March 5, 2005, do not constitute an accident within the meaning of that term as used in the policies, State Farm does not owe a duty under them to defend or indemnify the Mehlman Estate in the Underlying Action. *See Gene's Restaurant*, 548 A.2d at 247 & n. 1 (existence of accident was "policy requisite," and insurer owed no duty to defend where alleged injuries not caused by accident).

Ordinarily in insurance coverage disputes an insured bears the initial burden to make a prima facie showing that a claim falls within the policy's grant of coverage, but if the insured meets that burden, the insurer then bears the burden of demonstrating that a policy exclusion excuses the insurer from providing coverage if the insurer contends that it does. *Koppers*, 98 F.3d at 1446 (applying Pennsylvania law). Courts interpreting "occurrence" policies have split on whether they should analyze the insured's intent as part of the insured's prima facie case of demonstrating that there was an accident, or as part of the insurer's burden to demonstrate that the exclusion for intentional conduct is applicable. *See* Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes 442–44, § 8.03[e] (10th ed.2000) (comparing different approaches).

Here the plain language of both policies limits coverage to damage caused by an accident, and the parties have briefed and argued the case on that basis. Accordingly, we examine Mehlman's intent in engaging in his conduct in the context of determining whether the insurance policies affirmatively provide coverage, i.e., in deciding whether there was an accident so that there was a "loss" or "occurrence" for which there is coverage.[7] *Cf. Minnesota Fire & Cas. Co. v. Greenfield*, 579 Pa. 333, 855 A.2d 854, 861 n. 6 (2004) (noting that although it may be preferable to resolve case by principles of contract construction and hold that a sale of heroin was not an "accident," that issue had not properly been raised on appeal).

Neither policy provides a definition of "accident," but the Pennsylvania Supreme Court, in noting that courts have at times struggled to determine whether there has been an accident, has emphasized that the fortuity of the events in question is the key factor to consider in making that determination:

> An accident, simply stated, is merely an unanticipated event; it is something which occurs not as the result of natural routine but as the culmination of forces working without design, coordination or plan. And the more disorganized the forces, the more confusedly they operate, the more indiscriminately haphazard the clash and intermingling, the more perfect is the resulting accident.

*Brenneman v. St. Paul Fire & Marine Ins. Co.*, 411 Pa. 409, 192 A.2d 745, 747 (1963). Moreover, "[q]ualification of a particular incident as an accident seems to depend on two criteria: 1. the degree of foreseeability, and 2. the state of mind of the actor in intending or not intending the result." Black's Law Dictionary 16 (9th ed.2009) (quoting John F. Dobbyn, Insurance Law in a Nutshell 128 (3d ed.1996)).

In determining whether Iacono's injuries resulted from an accident, we must view the operative events from Mehlman's perspective, for State Farm insured him not Iacono. *See Baumhammers*, 938 A.2d at 293 ("[W]e are required to determine whether, from the perspective of the insured, the claims asserted ... present the degree of fortuity contemplated by the ordinary definition of 'accident.'"). Accordingly, it is of no significance in our analysis that the events in question were unexpected, as they surely must have been, when viewed through the eyes of Iacono.

Neither Iacono nor the Mehlman Estate contends that any injury Iacono suffered in the incident was not a foreseeable result of

---

7. We do not suggest that our result would have been different if we had taken the other approach and considered Mehlman's intent in determining if an exclusion precluded coverage.

Mehlman's attempted shooting of her, and neither contends that, absent Mehlman's intoxication, any such injury could be considered the result of an accident. *See, e.g., Gene's Restaurant,* 548 A.2d at 247 n. 1 ("[A]n 'occurrence' must be an accident which a malicious, willful assault and beating could never be."). Thus, the dispute in this case centers on the question of whether Mehlman's intoxication might have rendered conduct accidental even though it otherwise would be regarded as intentional.

### 1. The Effect of Intoxication under Pennsylvania Law

■ In Pennsylvania, as elsewhere, "insurance is not available for losses that the policyholder knows of, planned, intended, or is aware are substantially certain to occur." See Ostrager & Newman, *supra,* at 419, § 8.02 (collecting cases); *see also United Servs. Auto Ass'n v. Elitzky,* 358 Pa.Super. 362, 517 A.2d 982, 989 (1986) ("An insured intends an injury if he desired to cause the consequences of his act or if he acted knowing that such consequences were substantially certain to result."). Accordingly, an insured is not entitled to coverage for damages caused by his intentional assault on another person. *Gene's Restaurant,* 548 A.2d at 247.

■ Under Pennsylvania law, "imbibed intoxicants must be considered in determining if the actor has the ability to formulate an intent." *Stidham v. Millvale Sportsmen's Club,* 421 Pa.Super. 548, 618 A.2d 945, 953 (1993) (citing *Nationwide Mut. Ins. Co. v. Hassinger,* 325 Pa.Super. 484, 473 A.2d 171, 176 (1984)). Thus, if the actor lacks the ability to formulate an intent, the resulting act cannot be intentional. *Id.* The mere fact that an insured was intoxicated, however, will not prevent a court from finding that he intended the natural and probable consequences of his

actions. *See State Farm Mut. Auto. Ins. Co. v. Martin,* 442 Pa.Super. 442, 660 A.2d 66, 68 (1995). It is entirely appropriate to recognize this limitation on the consequences of intoxication in coverage disputes, for alcoholic beverages certainly can contribute to the loosening of a person's inhibitions without eliminating his ability to intend to engage in harmful conduct. Indeed, the effect of the use of alcoholic beverages may contribute to a party formulating an intent to engage in anti-social conduct.

The Pennsylvania courts have on several occasions addressed the effect that an insured's intoxication has on the insured's capacity to commit an intentional act. In *Nationwide Mutual Insurance Co. v. Hassinger* the Pennsylvania Superior Court affirmed a declaratory judgment that resulted from a jury finding that Nationwide Mutual Insurance Company was not responsible to cover its insured, David Hassinger, on a liability policy for his conduct in driving his car while intoxicated and striking and killing a pedestrian. 325 Pa.Super. 484, 473 A.2d 171. There was evidence at the trial indicating that after Hassinger struck the decedent, he exited his car and stated "I told you I would get the son-of-a-bitch." *Id.* at 173–74. Hassinger and the decedent's estate nevertheless contended that Hassinger's intoxication had deprived him of the ability to formulate an intent. *Id.* at 173. The trial court instructed the jury that it must consider Hassinger's intoxication in determining whether he had the ability to formulate an intent, and the court emphasized that if an actor lacks such ability, the resulting act is not intentional. *Id.* at 176. The jury found that Hassinger had acted intentionally and the Superior Court affirmed, noting that the jury instruction regarding intoxication "was a fair statement" of Pennsylvania law. *Id.*

*Stidham v. Millvale Sportsmen's Club,* relied upon heavily by Iacono and the Mehlman Estate, arose from an incident in which the insured, Robert McLaughlin, shot and killed Brett Stidham in a bar. 618 A.2d at 948. McLaughlin, who had been drinking all day and who had a history of alcoholic blackouts, never had met Stidham prior to the shooting and claimed to have no memory of the incident. *Id.* at 948–49. McLaughlin subsequently pled guilty to third degree murder, which in Pennsylvania does not require proof of specific intent, but rather is satisfied by a showing of gross negligence. *Id.* at 949, 951 (citing 18 Pa. Cons.Stat. Ann. § 2501 (West 1998)). The administratrix of Stidham's estate initiated a wrongful death suit against the sports club where McLaughlin had been drinking earlier in the day, as well as the bar where the shooting occurred. *Id.* at 948. The two initial defendants then joined McLaughlin in a complaint alleging negligent, careless, reckless, and/or willful conduct. *Id.* After a judgment was entered against McLaughlin, the plaintiff instituted a garnishment proceeding against McLaughlin's insurer. *Id.* Relying solely on McLaughlin's guilty plea for third-degree murder, the insurance company successfully moved for summary judgment, contending that McLaughlin's conduct fell within the policy exclusion barring coverage for "expected or intended" conduct. *Id.* at 950.

On appeal the Pennsylvania Superior Court held that McLaughlin's guilty plea was not conclusive evidence of his intent, and that his intoxication may have deprived him of the ability to formulate an intent. *Id.* at 952–53. Accordingly, the court reversed the trial court's grant of summary judgment, holding that the Stidham complaint stated a cause of action that the insurance company may be compelled to cover. *Id.* at 953–54. In reaching its conclusion, the court noted that McLaughlin was suffering from "an alcoholic blackout as a result of his extreme intoxication" at the time of the shooting, that his precise intent never was determined conclusively in the underlying criminal proceedings, and that he had stated in his plea colloquy that he did not intend to kill or hurt anyone. *Id.* at 949, 951, 952–53.

In *State Farm Mutual Automobile Insurance Co. v. Martin* the Pennsylvania Superior Court considered an automobile insurance policy which provided coverage for bodily injury or property damage "caused by accident." 660 A.2d at 67. The owner of the policy, Frederick Martin, had driven drunk to his estranged wife's house, struck his wife with his truck, and repeatedly crashed the truck into his wife's vehicle, her rental home, and her boyfriend's vehicle. *Id.* at 67. When the police arrived, Martin stated to them that although he had aimed at his wife, he hoped that she was all right. *Id.* In holding that State Farm did not have a duty to provide coverage to Martin in an action initiated against him by reason of his conduct, the court rejected the contention that Martin's "conduct was unintentional (and, therefore, accidental) because he was under the influence of alcohol," and noted that:

> It is correct that Martin's speech was slurred, he smelled of alcohol, and a blood test disclosed an alcoholic blood content of .26 percent. However, 'while voluntary intoxication may so cloud the mind as to deprive it of the power of pre-meditation and deliberation [ ], it will not prevent the formation of the general intent necessary for the commission of an assault and battery.'

*Id.* at 68 (quoting *Esmond v. Liscio,* 209 Pa.Super. 200, 224 A.2d 793, 797 (1966)). The court also reaffirmed that a court must determine for insurance coverage

purposes whether an act is accidental from the vantage point of the insured. *Id.*[8]

■ Our review of the relevant Pennsylvania law leads us to conclude that Mehlman's intoxication cannot render his alleged actions on March 5, 2005—walking to his girlfriend's house equipped with a loaded handgun and, after encountering Iacono, attempting to shoot and kill her—accidental under Pennsylvania law. An actor is presumed to intend the natural and expected results of his actions. *Baumhammers,* 938 A.2d at 292 ("An injury [ ] is not 'accidental' if the injury was the natural and expected result of the insured's actions."). We realize that situations may arise in which an insured's intoxication, particularly when combined with other factors, may call the insured's intent into question. Thus, in *State Farm Fire & Casualty Co. v. Dunlavey,* 197 F.Supp.2d 183, 192 (E.D.Pa.2001), the court applying Pennsylvania law found that, based on "evidence of the insured's intoxication, physical infirmity in his left eye, temporary injury to his right eye, and the conflicting testimony as to intent," the insured may not have intended to injure his fellow bar patron by striking her with a motorcycle helmet. Nevertheless, we do not believe that Pennsylvania law permits us to treat Mehlman's conduct in attempting to shoot Iacono as an "accident" merely because Mehlman was intoxicated when he engaged in the conduct.

In a difference from the complaint in *Stidham,* there is no allegation in this case that Mehlman was in the midst of an alcoholic blackout and had lost awareness of his actions at the time he assaulted Iacono. The only allegations to support a conclusion that this case involves an accident are that Mehlman was intoxicated and cognitively impaired at the time of the attack, and that he had a blood alcohol level of 0.21 percent when the police discovered his body. Although these allegations indicate that Mehlman was drunk during the events at issue, they do not suggest that Mehlman lacked awareness of his actions. In fact, whatever the degree of Mehlman's intoxication it did not preclude him from walking one and one-half miles from Ristorante La Locanda to Sauter's residence. Thus, intoxicated or not Mehlman knew the route to take and he had the ability to walk the considerable distance required to get there. Furthermore, his repeated attempts to shoot Iacono certainly support a conclusion that he knew what he was doing and his ability to carry out his attempts demonstrate that his intoxication had a limited impact on his use of his faculties. Unlike his gun, which was not functioning as it was intended to do when it misfired, Mehlman certainly was functioning precisely as he intended. Moreover, *Martin,* a case involving allegations of intoxication similar to those at issue in this appeal, demonstrates that the Pennsylvania courts will not lightly allow an insured to avoid the financial repercussions of an act of violence by drinking himself into insurance coverage.

We are aware of the point raised by Iacono and the Mehlman Estate that the insured actors in both *Hassinger* and *Martin* made statements indicating their intent when engaging in the conduct for which coverage was being pursued, whereas Mehlman was not alleged to have made any such statement. *See Martin,* 660 A.2d at 67 (insured told police that he had aimed his truck at his wife but that he hoped she was all right); *Hassinger,* 473 A.2d at 175 ("I told you I would get the son-of-a-bitch."). This distinction, while accurate, is not dispositive. Such a state-

---

8. The *Martin* court did not describe the underlying action but it seems to have been a property damage case that the owners of his estranged wife's rental property brought.

ment, like other indicia of intent—including an insured's intoxication—is merely one factor that a court should consider in determining whether the insured intended to cause the results of his or her actions. *See Germantown Ins. Co. v. Martin,* 407 Pa.Super. 326, 595 A.2d 1172, 1175 (1991) (noting the insured's lack of intoxication, and stating that evidence that the insured "chose an automatic handgun, brought extra ammunition, drove to the right house, approached without incident and shot repeatedly each person he saw leads [ ] inescapably to the conclusion that [he] expected or intended to cause serious harm").

■ Furthermore, when considering the significance of the insureds' statements in *Hassinger* and *Martin,* it should be remembered that it was alleged that they made the statements immediately following the events in question at a time that they surely were intoxicated. *See Martin,* 660 A.2d at 67; *Hassinger,* 473 A.2d at 175. In any event, Pennsylvania law does not require that for an insured's actions to be considered intentional it must be accompanied by a declaration indicating that the insured acted intentionally.

In sum there is no escape from a conclusion that Mehlman's alleged actions demonstrate that he had an unmistakable intent to cause harm to Iacono. Damages resulting from a violent assault with a deadly weapon are "exactly the type of injury against which insurance companies are not and should not be expected to insure." *See Germantown Ins. Co.,* 595 A.2d at 1175. We believe the Pennsylvania Supreme Court would agree with the Superior Court's observation in *Martin* that voluntary intoxication ordinarily will not prevent the formation of the general intent necessary for the commission of an assault of the kind Iacono alleges to have suffered.[9] *See* 660 A.2d at 68. Furthermore, Iacono in her amended complaint alleged that Mehlman "through his intentional and/or extreme reckless actions, intended to inflict severe emotional distress" on her. App. at 65. Where, as here, the injured party does not make allegations indicating that an insured's intoxication prevented him from intending the consequences of his violent behavior, we are satisfied that Pennsylvania law does not permit an insured or his representative, i.e., the Mehlman Estate, to shift responsibility for the damages resulting from his behavior to his insurer.[10]

9. The District Court minimized the significance of *Martin* because the Superior Court's holding in that case with respect to alcohol use and intent relied on a quotation from *Esmond v. Liscio. Martin,* 660 A.2d at 68. The District Court distinguished *Esmond,* a 1966 decision of the Superior Court, because the Court reached its conclusion in that case only after consideration of a well-developed factual record. *See State Farm,* 2008 WL 863969, at *6. We find this distinction unavailing given that the Superior Court in *Martin* applied *Esmond*'s holding to a case in which the record was developed in a manner analogous to the process in the present matter.

10. In holding that none of the policy exclusions barred Iacono's claims, the District Court noted that if it "wished to protect itself from the duty to defend an intoxicated insured, State Farm could have added more specific language to its policy to expand and clarify its exclusions." 2008 WL 863969, at *7. By providing coverage only for damages caused by accidents, we believe State Farm *did* express its desire to exclude coverage for damages caused by a drunken insured's violent assault. *See* Mark W. Dykes, *Occurrences, Accidents, and Expectations: A Primer of These (and Some Other) Insurance Law Concepts,* 2003 Utah L.Rev. 831, 874 (2003) ("[H]omeowner's policies are usually broad in their coverage. It is not a satisfactory answer to say that insurers may draft around results that they may not fairly be deemed to have anticipated, particularly when such efforts will lead to long policies of daunting complexity.").

### 2. *Iacono's Allegations of Negligence*

We recognize that Iacono's amended complaint in the Underlying Action contains two causes of actions charging the Mehlman Estate with negligence. Iacono and the Mehlman Estate argued in the District Court that these negligence counts, coupled with the allegations regarding Mehlman's intoxication, were sufficient to trigger State Farm's duty to defend. Though the District Court accepted that argument in dealing with the Umbrella Policy, *State Farm*, 2008 WL 863969, at *5–7, we disagree with the Court on this point. Mehlman's intoxication did not render his attack on Iacono unintentional, and the inclusion of two negligence causes of action cannot change that circumstance. *See Mut. Benefit Ins. Co. v. Haver*, 555 Pa. 534, 725 A.2d 743, 745 (1999) ("[T]he particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint."); *Scopel v. Donegal Mut. Ins. Co.*, 698 A.2d 602, 605 (Pa.Super.Ct.1997) ("[I]n focusing attention upon the *cause of action* pled, [claimants] run afoul of our caselaw, which dictates that the *factual averments* contained in a complaint determine whether an insurer must defend.") (emphasis in original). Iacono cannot square the circle by stating that Mehlman breached the duty of care he owed Iacono when he attempted to shoot and kill her. Of course, Mehlman breached a duty that he owed Iacono but the duty he breached was not a duty of reasonable care, it was a duty not to harm her intentionally. We cannot permit Iacono, with allegations such that "Dr. Mehlman further breached his duty to [Iacono] when he attempted to shatter the driver's side window with his elbow, pointed his gun at [Iacono] and pulled the trigger," App. at 67, to convert an intentional act into an act of mere negligence.[11]

## V. CONCLUSION

Because we conclude Iacono's alleged injuries were not caused by an accident, we hold that there was not an "occurrence" under the Homeowners Policy or a "loss" under the Umbrella Policy triggering a duty on the part of State Farm to defend or indemnify the Mehlman Estate in the Underlying Action. In light of this conclusion, we need not consider the parties' remaining contentions regarding the applicability of the policy exclusions or whether Iacono sufficiently alleged that she suffered "bodily injury." Accordingly, we will affirm the order of the District Court insofar as it holds State Farm does not have a duty to defend or indemnify the Mehlman Estate under the Homeowners Policy, but will reverse insofar as it holds that it has such a duty to defend under the Umbrella Policy and will remand the case to the District Court to enter judgment in favor of State Farm.

11. Our examination of the cases we have cited reveals that there is a tension in intoxication insurance coverage situations. On the one hand it is unfortunate that the denial of coverage is likely to deprive an innocent victim from obtaining compensation for her injuries but on the other hand the Pennsylvania cases make plain that it is against the policy of that State to provide insurance coverage for insureds intentionally committing wrongful acts intended to cause injury. Moreover, insurance companies are not eleemosynary institutions and thus courts cannot require them to provide coverage beyond the scope of the coverage in their contracts unless duly adopted legal requirements compel the companies to provide such coverage. There is no such legal requirement implicated here.