**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1651
_____

LIBERTY LIFE INSURANCE COMPANY

v.

VERONICA N. FIGUEROA, Administratrix of Estate of Ernesto Figueroa,
also known as Ernesto F. Carrion,
                                        Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 5:09-cv-03069)
District Judge: Hon. James Knoll Gardner
_____

Submitted Under Third Circuit LAR 34.1(a)
December 15, 2011

Before:  SLOVITER, VANASKIE and GREENBERG, *Circuit Judges*

(Filed: February 9, 2012)
_____

OPINION
_____

VANASKIE, *Circuit Judge*.

Liberty Life Insurance Company ("Liberty Life") brought this action in the United

States District Court for the Eastern District of Pennsylvania against Victoria N.

Figueroa, the Administratrix of the estate of her late father, Ernesto Figueroa, seeking a

declaratory judgment that the company is not obligated to provide benefits under Mr. Figueroa's accidental death insurance policy. The District Court entered summary judgment in favor of Liberty Life, holding that there was no coverage under the policy because Mr. Figueroa's death was not the result of an "accidental bodily injury." We disagree and will reverse.

I. Background

Because we write primarily for the parties, we assume familiarity with the case and discuss only those facts necessary to our decision. On the night of January 29, 2008, Ernesto Figueroa went to the Lehigh Valley Hospital emergency room with complaints of abdominal pain, nausea, and vomiting. After an initial examination, doctors ordered a CT scan with contrast dye. On the morning of January 30, Mr. Figueroa received the intravenous injection of contrast dye. Approximately one minute into the injection, Mr. Figueroa became nauseous, vomited multiple times, became "diffusely erythematous," and began scratching himself. Mr. Figueroa began to seize as he was brought back to the emergency room. He was administered epinephrine for apparent anaphylaxis, received CPR, and was intubated. Mr. Figueroa subsequently developed ventricular fibrillation, which did not respond to medication or defibrillation. He died at 7:37 a.m. on January 30, 2011. An autopsy confirmed Mr. Figueroa's cause of death as "acute anaphylaxis following intravenous dye administration." (A. 82.)

Mr. Figueroa and his wife, Margarita Carrion, were insured under an accidental death insurance policy issued by Liberty Life. The policy provided for an "Accidental Death Benefit" in the amount of the unpaid balance of Mr. Figueroa's home mortgage

2

upon "due proof [that the insured's] death occurred . . . as the direct and sole result of accidental bodily injury."  (A. 22.)

Ms. Carrion submitted a claim to Liberty Life for benefits under the policy. Liberty Life denied the claim and subsequently initiated this action against Victoria N. Figueroa, Mr. Figueroa's daughter and the Administratrix of his estate, seeking a declaratory judgment that it is not obligated to pay benefits under the policy.  The District Court held oral argument on the parties' cross-motions for summary judgment and on February 25, 2011, issued an opinion and order granting summary judgment in favor of Liberty Life on the ground that Ms. Figueroa "had not met [her] initial burden of establishing that Mr. Figueroa's death was an 'accidental bodily injury' under the plain language of the policy." *Liberty Life Ins. Co. v. Figueroa*, No. 09-cv-03069, 2011 WL 835939, at *8 (E.D. Pa. Feb. 25, 2011). The District Court did not reach the separate issue of whether the insurance policy's exclusion for death resulting "directly or indirectly, in whole or in part, from . . . disease, illness or infirmity of the body or mind" applies to preclude coverage.  In her instant appeal, Ms. Figueroa maintains that Mr. Figueroa's death resulted from an accidental bodily injury under the terms of the policy and that his death does not fall within the policy's exclusion for death resulting "directly or indirectly, in whole or in part, from disease, illness or infirmity."

II. Jurisdiction and Standard of Review

The District Court had diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332, and we have appellate jurisdiction under 28 U.S.C. § 1291.  We exercise plenary review of a district court's order resolving cross-motions for summary judgment.

3

*Tristani ex rel. Karnes v. Richman*, 652 F.3d 360, 366 (3d Cir. 2011). We also exercise plenary review over a district court's interpretation of state law, as well as its conclusion as to the legal operation of an insurance policy. *Royal Ins. Co. of Am. v. KSI Trading Corp.*, 563 F.3d 68, 73 (3d Cir. 2009). The parties do not dispute that Pennsylvania substantive law governs this diversity matter.

## III. Discussion

### A. Accidental Bodily Injury

In holding that Mr. Figueroa's death was not the result of an "accidental bodily injury," the District Court relied on this Court's observation in *State Farm Fire & Casualty Co. v. Estate of Mehlman*, 589 F.3d 105 (3d Cir. 2009), that "'[q]ualification of a particular incident as an accident seems to depend on two criteria: 1. the degree of foreseeability, and 2. the state of mind of the actor in intending or not intending the result.'"[1] *Id.* at 111 (quoting Black's Law Dictionary 16 (9th ed. 2009) (quoting John F. Dobbyn, Insurance Law in a Nutshell 129 (3d ed. 1996)). The District Court stated that because it was unable to conclude that Mr. Figueroa's death was unforeseeable, it could not conclude that Ms. Figueroa had met her initial burden of showing that the death was

---

[1] Liberty Life has argued that Mr. Figueroa did not suffer from an "*accidental* bodily injury," without specifically arguing that Mr. Figueroa did not suffer from a "bodily injury." We attribute the absence of any argument on the issue of whether Mr. Figueroa's anaphylactic reaction constituted a "bodily injury" to the parties' recognition that it was, without question, such an injury. *See Beckham v. Travelers Ins. Co.*, 225 A.2d 532 (Pa. 1967) (holding that an insured's unintended fatal drug overdose constituted a "bodily injury . . . effected . . . through accidental means" within the terms of his life insurance policy).

4

the result of an "accidental bodily injury." In the District Court's view, Mr. Figueroa's death was foreseeable because it was a possible, albeit remote, consequence of being injected with contrast dye.

"Foreseeable," however, often means more than that which is merely "possible." Indeed, the term is defined in the dictionary as "being such as may be reasonably anticipated." Webster's Third New International Dictionary 890 (1993). Under that definition, to the extent Mr. Figueroa's death was not "reasonably anticipated," it was not foreseeable. While we think a better view of "foreseeability" in this context would be the degree to which an event is reasonably anticipated or expected, we will refrain from analyzing the "foreseeability" of Mr. Figueroa's death because the "foreseeability" of an event does not control whether it qualifies as an accident under Pennsylvania law.[2]

In *Kvaerner Metals Division of Kvaerner U.S., Inc. v. Commercial Union Insurance Co.*, 908 A.2d 888 (Pa. 2006), the Pennsylvania Supreme Court, relying on the dictionary definition of "accident" as "[a]n unexpected and undesirable event," or "something that occurs unexpectedly or unintentionally," stated that "[t]he key term in the ordinary definition of 'accident' is 'unexpected,'" which, the Court explained, "implies a degree of fortuity." *Id.* at 897-98 (citing Webster's II New College Dictionary

---

[2] It bears noting that notwithstanding our reference in *Mehlman* to foreseeability, the holding in *Mehlman* that an insured's conduct in attempting to shoot another was not "accidental" under Pennsylvania law did not at all turn on foreseeability, but rather on our determination that the insured, despite his intoxication, had intended his actions. *See Mehlman*, 589 F.3d at 111-14. Moreover, we explicitly stated that the Pennsylvania Supreme Court "has emphasized that the fortuity of the events in question is the *key factor* to consider in making [the] determination [of whether there has been an accident]." *Id.* at 111 (emphasis added).

6 (2001)).  The Pennsylvania Supreme Court has further explained that "'the test of whether injury is a result of an accident is to be determined from the viewpoint of the insured and not from the viewpoint of the one that committed the act causing the injury.'" *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 292 (Pa. 2007) (quoting *Mohn v. Am. Cas. Co. of Reading*, 326 A.2d 346, 348 (Pa. 1974)).  Thus, under Pennsylvania precedent, "we are required to determine whether, from the perspective of the insured, the claim[] asserted by [Ms. Figueroa] present[s] the degree of fortuity contemplated by the ordinary definition of 'accident.'" *Id.* at 293.  We believe that from Mr. Figueroa's perspective, the fatal anaphylactic reaction was an exceedingly unexpected consequence of receiving the contrast dye injection. [3]  Consequently, we hold that under Pennsylvania law, Mr. Figueroa's death was the result of an "accidental bodily injury" within the meaning of the policy.

### B.  "Disease, Illness or Infirmity" Exclusion

Because the District Court held that Mr. Figueroa's death was not covered under the policy as a death resulting from an "accidental bodily injury," it did not reach Liberty Life's alternative argument that coverage was precluded under the policy's exclusion for "death which results directly or indirectly, in whole or in part, from . . . disease, illness or

---

[3] Although the record indicates that an "[a]llergic reaction warning was given" (A. 55), it is not clear whether Mr. Figueroa was specifically warned about the risk of a fatal reaction.  Regardless, in light of the very low risk of severe or fatal anaphylaxis, the warning does not render Mr. Figueroa's injury the "the natural and expected result" of his receiving the contrast dye.  *See Baumhammers*, 938 A.2d at 292 ("An injury . . . is not 'accidental' if the injury was the natural and expected result of the insured's actions.").

infirmity of the body or mind." (A. 22.) Liberty Life argued below and maintains on appeal that this exclusionary clause applies because Mr. Figueroa's gastrointestinal illness, which the autopsy revealed to be caused by "[n]umerous diverticula . . . present in the descending colon" (A. 87), "precipitated [the] chain of events" that resulted in Mr. Figueroa receiving the intravenous injection of contrast dye. (Liberty Life's Br. at 23.)

In *Shiffler v. Equitable Life Assurance Society of the United States*, 838 F.2d 78 (3d Cir. 1988), this Court, applying Pennsylvania law, held that when an insurance "policy contains a . . . clause precluding recovery if the death was caused directly or indirectly by disease, there can be no recovery if the preexisting disease *contributed* to the death." *Id.* at 84 (emphasis added). It is clear that Mr. Figueroa's illness was not a contributing factor in his death, it being undisputed that the sole cause of death was "acute anaphylaxis." (A. 82.) *See Speer v. W. & S. Life Ins. Co.*, 43 A.2d 562, 566 (Pa. Super. Ct. 1945) (holding that because it was an admitted fact that the insured's death was due solely to a skull fracture from falling on a concrete floor, "*death* could not have been due, even partially, to a preexisting disease or infirmity"). We accordingly hold that Mr. Figueroa's death does not fall within the policy's exclusion for death "result[ing] directly or indirectly, in whole or in part, from . . . disease, illness or infirmity of the body or mind."

IV. Conclusion

For the foregoing reasons, we will reverse the District Court's grant of summary judgment in favor of Liberty Life, and remand with instructions for the District Court to enter judgment in favor of Ms. Figueroa.

7