**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2211
_____

THE FIRST LIBERTY INSURANCE CORP

v.

MM, A Pseudonym; BB, A Pseudonym

*MM,
Appellant

*(Amended pursuant to the Clerk's Order dated 8/24/17)

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2-16-cv-05397)
District Judge: Hon. Harvey Bartle, III

_____

Submitted under Third Circuit L.A.R. 34.1(a)
April 20, 2018

Before: GREENAWAY, JR., RENDELL, and FUENTES, Circuit Judges

(Opinion filed: August 20, 2018)

_____

O P I N I O N[*]

_____

**RENDELL**, *Circuit Judge*

BB (pseudonym) alleged in a lawsuit against MM (pseudonym) ("underlying complaint" or "underlying civil litigation") that MM "negligently, intentionally and illegally videotaped [her] performing a sexual act on him without her knowledge or consent" while at an off-campus party at American University. A. 43. Relatedly, MM pleaded guilty to criminal Voyeurism in the District of Columbia.

MM made a demand of First Liberty Insurance, the insurer under his parents' homeowner's policy, that it undertake the defense of the action. First Liberty brought a declaratory judgment action, and the District Court agreed that it was under no duty to defend or indemnify MM in the underlying lawsuit. MM contends that this was erroneous because the policy exclusions the District Court cited—for "sexual molestation" or criminal conduct—were either inapplicable or insufficient to absolve First Liberty of a duty to defend. Because the District Court properly concluded that, under Pennsylvania law, First Liberty had no duty to defend or indemnify MM with respect to BB's underlying complaint alleging that while she was intoxicated, MM "attack[ed]" her and videotaped her "without her knowledge or consent" and then "shared this illegal video with his friends and classmates," we will affirm. A. 43-44, 46.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

# I. BACKGROUND

## A. Facts

We accept the following facts, taken from BB's underlying complaint and incorporated by reference in First Liberty's Complaint, as true. *See Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591, 595–96 (3d Cir. 2009) ("In determining the existence of a duty to defend, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured." (quoting *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999))).

BB was a freshman at American University when MM allegedly videotaped her performing a sexual act on him without her knowledge or consent. **A. 43.** The incident occurred at an off-campus party, and BB was intoxicated, "disoriented," and "had no recollection of" the event. A. 43–44. The next day, MM shared the video with his friends and classmates. **A. 44.** BB became aware of the incident when others told her about the video. *Id.* She alleges that she has experienced physical injuries, severe emotional distress, depression, humiliation, and embarrassment as a result of the "unconsented physical contact, illegal videotaping, and unauthorized sharing of that videotape with others." A. 176.

District of Columbia Metropolitan police arrested MM, and he pleaded guilty to one count of "Voyeurism – Recording." A. 7.

BB then filed a civil action against MM in the District of Columbia based on the conduct alleged above. She brought two claims: (1) Negligence & Gross Negligence,

and (2) Assault & Battery. **A. 45–46.** She sought $750,000 in compensatory damages plus interest and costs for each claim. ***Id.***

### B. Procedural History

MM sought coverage and a defense from First Liberty in the underlying civil litigation. First Liberty then brought this declaratory judgment action against MM and BB after informing MM and his parents that under their policy, First Liberty had no duty to defend or indemnify MM in the underlying litigation. **A. 37.** MM filed a counterclaim seeking a declaratory judgment that First Liberty *was* required to defend and indemnify him under the policy. **A. 111–114.** The parties filed cross-motions for judgment on the pleadings.

The District Court, applying Pennsylvania law, granted First Liberty's motion for judgment on the pleadings, declared that First Liberty had no duty to defend or indemnify MM in the civil action filed against him by BB, and denied MM's motion for partial judgment on the pleadings. **A. 18.** Specifically, the Court determined that the alleged conduct fell within the sexual molestation exclusion, noting that throughout the complaint BB characterized the incident as an "assault," and "unconsented." A. 14. It disregarded MM's contentions that because BB was too intoxicated to recall the incident, she could plausibly have consented, and that because BB was the one who performed the sexual act, she could not have been assaulted. **A. 15.**

Additionally, the Court determined that because MM had pleaded guilty to the criminal charge of voyeurism, he admitted that he recorded BB engaging in sexual activity without her consent. **A. 17–18.** The Court concluded that the policy excluded

4

injury flowing from the intentional or criminal acts of an insured, and so excluded MM from coverage. **A. 18.** This appeal followed.

## II. DISCUSSION

The District Court had jurisdiction in this diversity of citizenship action pursuant to 28 U.S.C. § 1332; our jurisdiction rests upon 28 U.S.C. § 1291. We review a denial of a motion for judgment on the pleadings de novo. *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017). Federal Rule of Civil Procedure 12(c) is unlike 12(b)(6) because on a 12(c) motion, judgment will not be granted "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *In re Asbestos Prod. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.6 (3d Cir. 2016) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.3d 289, 290 (3d Cir. 1988)). We must view the facts presented in the pleadings and the inferences to be drawn from them in the light most favorable to the nonmoving party. *Id.* at 133. The parties agree that Pennsylvania law applies. A. 9.

On appeal, MM contends that the District Court's order was erroneous because it improperly disregarded several reasonable readings of BB's underlying complaint that would fall within the policy's coverage, and it incorrectly concluded that the cited exclusions applied to her claims.

To determine whether there is a duty to defend, courts look to the scope of the policy's coverage, comparing the coverage with the factual allegations contained within the four corners of the underlying complaint. *Mut. Benefit Ins. Co. v. Haver.*, 725 A.2d 743, 745 (Pa. 1999). An insurer must defend an insured when the complaint against the

insured may come within the policy's coverage. *First Oak Brook Corp. Syndicate v. Comly Holding Corp.*, 93 F.3d 92, 94-95 (3d Cir. 1996). The duty to defend is broad, but if all claims of the underlying complaint are outside the policy's scope, there is no duty to defend or indemnify. *Cf. Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 831 n.1 (3d Cir. 1995) ("Under Pennsylvania law, when an insured tenders multiple claims to an insurer for defense, the insurer is obligated to undertake defense of the entire suit as long as at least one claim is potentially covered by the policy. As to indemnification, however, the insurer is obligated to its insured only for those damages which are actually within the policy coverage." (citations omitted)).

The First Liberty policy provides, in relevant part:

**COVERAGE E – Personal Liability**
If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:
1. Pay up to our limit of liability for the damages for which the "insured" is legally liable . . . .; and
2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.

A. 68 (bold in original). Under the policy, "'[o]ccurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: a. 'Bodily injury'; or b. 'Property damage.'" A. 58.

The policy also contains two relevant exclusions. First, it states:

Coverage E—Personal Liability . . . do[es] not apply to "bodily injury" or "property damage":
. . .

6

k. Arising out of sexual molestation, corporal punishment or physical or mental abuse[.]

A. 68-69. Second, an Amendatory Endorsement to the policy also excludes liability coverage:

> For "bodily injury" or "property damage" that results, or may reasonably be expected to result, from the intentional or criminal acts or omissions of an "insured," even if it
> > (1) is of a different kind, quality, or degree than initially expected or intended; or
> > (2) is sustained by a different person, entity, real or personal property, than initially expected or intended.
> However, this exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

A. 88.

Like the District Court, we need not address whether MM's actions qualified as an "accident" because relevant policy exclusions apply to take his conduct outside the scope of policy coverage. Specifically, the policy excludes personal liability coverage for bodily injury or property damage "[a]rising out of sexual molestation,[1] corporal punishment or physical or mental abuse," A. 69, or resulting from "the intentional or criminal acts or omission of an 'insured,'" A. 88. Even construing the facts in BB's underlying complaint in MM's favor, his conduct falls under these exclusions and therefore the policy coverage does not apply.

---

[1] "Sexual molestation" is not defined in the policy, but the Oxford English Dictionary defines "molestation" as "[s]exual assault or abuse; an instance of this." *Oxford English Dictionary Online*, www.oed.com/view/Entry/120869. We therefore read "sexual molestation" to encompass acts of sexual assault or abuse. We need not consider this definition's outer limits because BB repeatedly called MM's conduct an "assault" in her underlying complaint.

7

MM contends, as he did before the District Court, that because the Underlying Complaint alleges negligent conduct as well as assault and battery, the counts of negligence sufficed to trigger First Liberty's duty to defend. MM is factually correct that, in addition to a count of "Assault & Battery," the Underlying Complaint asserts a count of "Negligence & Gross Negligence." A. 45–46. But merely alleging negligence through "artful pleading" will not trigger an insurer's duty to defend. *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 116 (3d Cir. 2009). Rather, we must look to the factual allegations of the complaint. *Id.* (citing *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999)).

BB's choice to include a cause of action for negligent conduct cannot alter the factual averment that MM "intentionally and illegally videotaped [BB] performing a sexual act on him without her knowledge or consent," while BB was "noticeably disoriented and not making any sense," and so intoxicated as to have "no recollection of the assault." A. 43–44. Nor does such an inclusion change the allegation that MM "shared this illegal video with his friends and classmates." A. 44. These averments fall squarely within the policy exclusions for "sexual molestation" and "intentional or criminal acts."

MM contends that there must be a "final factual determination that MM's conduct was intentional" before a court can decide that First Liberty is not under a duty to defend. Appellant's Br. at 15–16. Not so. Not only are we under no obligation to draw baseless factual inferences, but as the District Court recognized, the underlying complaint "repeatedly describes the incident as an unconsented and unwarranted sexual assault and

attack." A. 15. Contrary to MM's repeated averments,[2] there is simply no "reasonable reading" of BB's factual allegations that would suggest anything other than a nonconsensual sexual assault of a young woman who was so intoxicated that she could not recall the incident until she was informed the next day that she was illegally videotaped. MM remains free to attempt to prove his proffered set of facts in the underlying civil action.

Relatedly, MM argues that the "expected or intended harm" exclusion for harm flowing from criminal acts or omissions does not apply because the alleged negligent acts are covered by his policy. But by pleading guilty to the charge of "Voyeurism – Recording," D.C. Code § 22-3531(c)(1)(C), MM admitted that he criminally recorded his sexual activity with BB.[3] His policy excludes coverage for harm flowing from intentional *or* criminal acts. Even if we were to assume that MM somehow unintentionally videotaped the alleged encounter with BB, First Liberty would be under

---

[2] MM made the argument before the District Court that: "[s]urely a jury could conclude that MM believed the sexual act being performed upon him by BB and the videotaping of the same was consensual, but that such beliefs were not reasonable (i.e. negligence) due to BB's state of intoxication." A. 15. Similarly, he avers here that the Underlying Complaint can be "fairly read" to aver that "BB had sexual contact with MM wherein MM 'negligently' believed that BB consented or was capable of consenting to the same." Appellant's Br. at 5-6. Like the District Court, we are hard-pressed to square such a reading with the Underlying Complaint's allegation that BB was "noticeably disoriented and not making any sense" the night of the encounter, and that when she learned of the videotape for the first time the next day she "was absolutely shocked and devastated." A. 43–44.

[3] The statute criminalizes "electronically record[ing], without the express and informed consent of the individual being recorded, an individual who is . . . Engaging in sexual activity." D.C. Code § 22-3531(c)(1)(C).

no duty to provide a defense to allegations of harm flowing from the criminal offense to which he entered a guilty plea.

Thus, we conclude that First Liberty had no duty to defend MM in the Underlying Civil Action, or to indemnify him.[4]

### III. CONCLUSION

For the foregoing reasons, we will affirm the District Court's judgment and order.

---

[4] "Because the duty to defend is broader than the duty to indemnify, there is no duty to indemnify if there is no duty to defend." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225 (3d Cir. 2005).