**SCOTTSDALE INSURANCE COMPANY, Appellant**

v.

**The CITY OF EASTON; Matthew Renninger; Timothy Lambert; Robert Weber; John Mazzeo; Steven Mazzeo; Stuart Gallaher; Phillip B. Mitman; Carin E. Sollman, Individually and as Administratrix of the Estate of Jesse E. Sollman.**

No. 09–1815.

United States Court of Appeals, Third Circuit.

Argued Jan. 28, 2010.

Filed: May 11, 2010.

Cheryl L. Kovaly, Frank J. Lavery, Jr., James D. Young [Argued], Lavery, Faherty, Young & Patterson, PC, Harrisburg, PA, for Appellant, Scottsdale Insurance Company.

James T. Huber [Argued], Huber and Waldron, Allentown, PA, Ronald W. Shipman, Shipman & Grifo, Easton, PA, Craig J. Smith McElroy, Deutsche, Mulvaney & Carpenter, Philadelphia, PA, for Appellees, The City of Easton; Stuart Gallaher; Phillip B. Mitman.

Steven E. Hoffman, Tallman, Hudders & Sorrentino, Allentown, PA, for Appellees, Timothy Lambert; Robert Weber; Steven Mazzeo.

John P. Karoly, Jr., John Peter Karoly, III, Karoly Law Offices, Allentown, PA, for Appellee, Carin E. Sollman, Individually and as Administratrix of the Estate of Jesse E. Sollman.

Before: RENDELL and JORDAN, Circuit Judges, and AMBROSE, District Judge.[*]

## OPINION OF THE COURT

AMBROSE, District Judge.

This declaratory judgment action involves an insurance coverage dispute between Appellant Scottsdale Insurance Company ("Scottsdale") and Appellees City of Easton ("City" or "Easton"), Phillip B. Mitman, and Stuart Gallaher (collectively "Appellees")[1] regarding Scottsdale's

---

[*] Honorable Donetta W. Ambrose, Judge of the United States District Court for the Western District of Pennsylvania, sitting by designation.

1. Timothy Lambert, Robert Weber, Steven Mazzeo, and Carin Sollman also appear as Appellees on the docket. None of these four Appellees, however, participated in the briefing of this case or in oral argument. Instead,

each of these Appellees adopted the brief filed by the City of Easton, Mitman, and Gallaher. In addition, the District Court judge dismissed Lambert, Weber, and Mazzeo as defendants in the underlying civil rights action. In a footnote to his Memorandum and Order in the instant declaratory judgment action, the same judge noted that Scottsdale had consented to the dismissal of these individuals in

duty to defend and indemnify Appellees with respect to a civil rights action brought against Appellees and others in the United States District Court for the Eastern District of Pennsylvania in 2007 (the "underlying action"). Scottsdale filed the instant action and moved for summary judgment in the same Court seeking a declaration that it did not have a duty to defend or indemnify Appellees in the underlying action under a law enforcement liability policy it had issued to the City of Easton.

Scottsdale appeals an order of the District Court denying its motion for summary judgment and dismissing its declaratory judgment action against Appellees. For the reasons set forth below, we will reverse the judgment of the District Court and remand with directions to enter summary judgment in favor of Scottsdale.[2]

## I.

Because we write solely for the parties, who are familiar with the facts, procedural history and contentions presented, we will limit our discussion to only those facts necessary for our analysis.

### A. *The Underlying Action*

On March 25, 2007, Carin Sollman, individually and as the administratrix of the Estate of Jesse E. Sollman, filed a civil complaint against the City of Easton, Mitman, Gallaher, Matthew Renninger, Timothy Lambert, Robert Weber, John Mazzeo, and Steven Mazzeo in the United States District Court for the Eastern Pennsylvania at Civil Action No. 07–1183. On January 16, 2009, after the District Court dismissed counts against several of

the individual defendants, and while Scottsdale's motion for summary judgment in the instant declaratory judgment action was pending, Carin Sollman filed an amended complaint naming only the City of Easton, Mitman, Gallaher, and Renninger as defendants.

The following facts were pled in the underlying action. On March 25, 2005, Jesse Sollman ("Officer Sollman") was a member of the City of Easton Police Department's SWAT team. Following a SWAT team exercise on that date, members of the team returned to police headquarters and began unloading and cleaning the weapons used during the exercise. Officer Sollman along with fellow SWAT team members Renninger and Weber performed these tasks in a secondary weapons cleaning room. After cleaning his weapon, Renninger proceeded to the locker room where he reloaded his weapon. Upon noticing a mark on the weapon, Renninger returned to the secondary cleaning room with the loaded weapon. Renninger placed the safety on, cleaned the slide portion of the weapon to remove the spot, and then removed the safety and turned to exit the room. In the process of turning, Renninger's weapon discharged, firing a bullet that fatally wounded Officer Sollman.

Subsequently, a statewide Grand Jury was empaneled to investigate the circumstances of Officer Sollman's death. The grand jury concluded that his death was the result of

the cumulative effect of: the deficiency of the firearm safety facilities; the absence of appropriate firearm safety stan-

---

this case. *See* Mem. at 3 n. 3. To the extent that these four individuals remain Appellees in this case, our holdings herein apply equally to them. Additional Defendants Matthew Renninger and John Mazzeo are non-participants in this appeal.

**2.** The District Court had subject matter jurisdiction under 28 U.S.C. § 1332. Our appellate jurisdiction is authorized by 28 U.S.C. § 1291.

dards; the failure of the Easton Police Department command structure to establish and enforce safety standards and procedures; and, the series of negligent actions by Officer Renninger.

(App.442). The amended complaint further alleges a number of practices of the Easton Police Department that may have contributed to the shooting incident including: that there were previous incidents of accidental or negligent weapons handling and/or discharge; that the police department did not provide any training pertaining to the transport of weapons, loading and unloading of weapons, or cleaning of weapons within police headquarters; that officers routinely loaded and unloaded weapons without using sand safety barrels and were not penalized; and that no written policies existed regarding the transportation, cleaning, loading and unloading, use of a safety, or holstering of weapons in police headquarters.

Based on the above factual background, Officer Sollman's widow filed the underlying action alleging federal claims against the individuals and the City, including various § 1983 and substantive due process claims, § 1983 supervisory liability and civil conspiracy claims against the individual defendants, and *Monell* claims against the City. The underlying action also asserts various state constitutional and tort law claims against the individuals and the City.

### B. *The Applicable Insurance Policy*

Scottsdale issued the Public Entity Policy at issue to the City of Easton, effective January 1, 2004 through January 1, 2005, and renewed for the period from January 1, 2005 through January 1, 2006 (the "Policy"). The Policy provides occurrence-based Law Enforcement Liability Coverage in consideration for a specified premium. The Policy does not provide general liability coverage or coverage for liability arising out of a public official's wrongful acts. The Policy initially provided limits of liability of $3 million that were increased in 2004 to $10 million. The City of Easton is the Named Insured on the Policy. (App.83, 255).

### C. *The Present Declaratory Judgment Action*

Scottsdale initially received notice of the Sollman claim on March 12, 2007, and denied coverage for the claim on March 19, 2007. Subsequently, Carin Sollman filed her complaint in the underlying action which was sent to Scottsdale and received by a Claim Specialist on April 2, 2007. The Claim Specialist forwarded that complaint for a coverage review and assessment. Scottsdale thereafter rescinded the March 19, 2007 coverage denial and accepted the claim subject to a complete reservation of its rights to seek declaratory relief.

Scottsdale filed the instant declaratory judgment action on July 27, 2007. After limited discovery, Scottsdale filed a motion for summary judgment on December 15, 2008, seeking a declaration that Scottsdale had no duty under the Policy to defend and/or indemnify Appellees in the underlying action. Appellees opposed Scottsdale's motion.

By Memorandum and Order entered March 10, 2009, 2009 WL 673291, the District Court denied Scottsdale's motion for summary judgment and dismissed the declaratory judgment action, concluding that Scottsdale had a duty to defend and potentially indemnify Appellees in the underlying action. With respect to indemnification, the District Court rejected Scottsdale's argument that the case fell within the Policy's exclusion for "injuries arising out of and in the course of employment by the insured." In this regard, the District Court found that the phrase "in

the course of employment" in the Policy is black letter worker's compensation law and that "[t]he repetition of worker's compensation language defines the exclusion as limiting Scottsdale's coverage to suits other than worker's compensation claims." Mem. at 5. The Court further noted that the Policy states that it covers civil rights claims arising out of law enforcement activities. *Id.* The Court reasoned that Sollman had brought a civil rights claim arising out of a police department activity within the police department premises and that any worker's compensation claim was outside the scope of the underlying action. *Id.* Accordingly, the Court held that "[u]nder the plain language of the policy, ... the underlying case falls within Scottsdale's obligation to indemnify the City." *Id.*

With respect to the duty to defend, the District Court held that under Pennsylvania law, an insurer has a duty to defend if the complaint filed by the injured party potentially comes within the policy's coverage. *Id.* The Policy states that Scottsdale "will have the right and duty to defend any 'suit' against the insured even if any of the allegations of the 'suit' are groundless, false or fraudulent." *Id.* The District Court found that Sollman's § 1983 claims and *Monell* claim were civil rights claims and, as such, Scottsdale had undertaken to defend the City in the case. *Id.* at 6.

On March 20, 2009, Scottsdale filed a timely notice of appeal to this Court from the District Court's March 10, 2009 Memorandum and Order.

## II.

We exercise plenary review over the District Court's grant or denial of summary judgment. *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 557 (3d Cir.2008). In so doing, we assess the record using the same summary judgment standard that guided the District Court. Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if there are no genuine issues of material fact and if, viewing the facts in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Under Pennsylvania law, which the parties agree applies here, the interpretation of the scope of coverage of an insurance contract is a question of law properly decided by the court. *Med. Protective Co. v. Watkins,* 198 F.3d 100, 103 (3d Cir.1999); *Standard Venetian Blind Co. v. Am. Empire Ins. Co.,* 503 Pa. 300, 469 A.2d 563, 566 (1983). The goal of insurance contract interpretation is to "ascertain the intent of the parties as manifested by the language of the policy." *Visiting Nurse Ass'n v. St. Paul Fire & Marine Ins. Co.,* 65 F.3d 1097, 1100 (3d Cir.1995). When the language of an insurance policy is clear and unambiguous, the court must enforce that language. *Med. Protective Co.,* 198 F.3d at 103; *see also Madison Constr. Co. v. Harleysville Mut. Ins. Co.,* 557 Pa. 595, 735 A.2d 100, 106 (1999) ("We will not ... distort the meaning of the language or resort to a strained contrivance to find an ambiguity.").

Generally, "in insurance coverage disputes an insured bears the initial burden to make a prima facie showing that a claim falls within the policy's grant of coverage, but if the insured meets that burden, the insurer then bears the burden of demonstrating that a policy exclusion excuses the insurer from providing coverage if the insurer contends that it does." *State Farm Fire & Cas. Co. v. Estate of Mehlman,* 589 F.3d 105, 111 (3d Cir.2009).

An insurer may seek a declaratory judgment with respect to the obligations of the parties under an insurance contract, including the question of whether the insurer has a duty to defend and/or indemnify a party making a claim under the policy. *Gen. Accident Ins. Co. of Am. v. Allen,* 547 Pa. 693, 692 A.2d 1089, 1095 (1997). In Pennsylvania, an insurance company is obligated to defend an insured whenever the complaint filed by the injured party may *potentially* come within the policy's coverage. *Pac. Indem. Co. v. Linn,* 766 F.2d 754, 760 (3d Cir.1985). The duty to defend "also carries with it a conditional obligation to indemnify in the event the insured is held liable for a claim covered by the policy." *Gen. Accident Ins. Co. of Am.,* 692 A.2d at 1095. "Although the duty to defend is separate from and broader than the duty to indemnify, both duties flow from a determination that the complaint triggers coverage." *Id.*

In determining whether an insurer owes a duty to defend or indemnify an insured in an underlying action, the court must examine the allegations in the underlying complaint and the language of the applicable insurance policy. *State Farm Fire & Cas. Co.,* 589 F.3d at 110. Under Pennsylvania law,

> an insurer's duty to defend an action against the insured is measured, in the first instance, by the allegations in the plaintiff's pleadings.... In determining the duty to defend, the complaint claiming damages must be compared to the policy and a determination made as to whether, if the allegations are sustained, the insurer would be required to pay [the] resulting judgment.... [T]he language of the policy and the allegations of the complaint must be construed together to determine the insurer['s] obligation.

*Id.* (quoting *Donegal Mut. Ins. Co. v. Baumhammers,* 595 Pa. 147, 938 A.2d 286, 290 (2007)) (alterations in original); *see also Mut. Benefit Ins. Co. v. Haver,* 555 Pa. 534, 725 A.2d 743, 745 (1999) ("A carrier's duties to defend and indemnify an insured in a suit brought by a third party depend upon a determination of whether the third party's complaint triggers coverage.").

## III.

### A. *Scope of Coverage*

The parties do not seriously dispute that, absent the application of an exclusion, the Policy would cover the civil rights and other claims set forth in the underlying action. Indeed, there is little question that the underlying complaint alleges a "loss" resulting from "law enforcement wrongful act(s)" that arose out of and were committed during the course and scope of "law enforcement activities" to which the Policy at issue applies. As defined in the Policy, "law enforcement activities" are those activities conducted by the City of Easton Police Department, and "law enforcement wrongful act" means "any actual or alleged act, error or omission, neglect or breach of duty by the insured while conducting 'law enforcement activities' which results", *inter alia,* in: "personal injury" or "bodily injury" caused by an "occurrence." (App. 101–102, 106). The claims asserted in the underlying action, seeking damages resulting from the March 25, 2005 shooting death of Officer Sollman by Officer Renninger, plainly fall within these parameters.

### B. *"Employee Injury" Exclusion*

The primary issue before us is whether one or more of the Policy's stated exclusions bars coverage in this case. Scottsdale predominantly relies on the "employee injury" exclusion (Exclusion No. 8)

contained in Section II of the Law Enforcement Liability Coverage Form as the basis for its argument that it does not have a duty to defend or indemnify Appellees in the underlying action.[3] Specifically, Scottsdale alleges that this exclusion applies to the claims asserted in the underlying action because all claims asserted in that action arise from the same occurrence—the accidental shooting death of Officer Sollman. Because that occurrence and the resultant injury happened in the course and scope of the Sollman's employment by the Insured (i.e., the City of Easton), the "employee injury" exclusion clearly and unambiguously bars coverage.

 We agree. Under the plain terms of the employee injury exclusion, Scottsdale has no duty to make any payment or defend any suit in connection with any claim for "personal" or "bodily injury" to "[a]n employee of the insured arising out of and in the course of employment by the insured" or "[t]he spouse ... of that employee ... as a consequence of" the same. (App.103, 275). The insurance claims at issue are precisely such claims. That is, all the claims in the underlying action are either for injury to Officer Sollman stemming from his accidental shooting death or to his wife as a consequence of the same. The Policy's definitions of "bodily" and/or "personal" injury unambiguously encompass, *inter alia*, physical and mental injuries as well as civil rights violations. (App.89, 106–07, 261, 278–79). All of the injuries asserted in the underlying action

fall within these definitions. Moreover, as explained *infra*, there is no question that the shooting death arose out of and in the in the course of Officer Sollman's employment as a City of Easton police officer. In addition, the exclusion applies "[w]hether the insured may be liable as an employer or in any other capacity." (App.103, 275). Thus, the exclusion applies whether the City was sued in its capacity as Officer Sollman's employer or as a "state actor" with respect to the civil rights claims in the underlying action. Because the employee injury exclusion expressly bars coverage for the claims in the underlying action, the District Court erred as a matter of law in denying Scottsdale's motion for summary judgment.

In its March 2009, Memorandum, the District Court summarily rejected Scottsdale's argument that the case fell within the employee injury exclusion. Citing the Pennsylvania Workers Compensation Act, the District Court stated that the phrase "in the course of employment" in the Policy is black letter worker's compensation law and that "the repetition of worker's compensation language defines the exclusion as limiting Scottsdale's coverage to suits other than worker's compensation claims." Mem. at 5. The court further noted that the Policy states that it covers civil rights claims arising out of law enforcement activities and that Sollman had brought a civil rights claim arising out of a police department activity within the police department premises. Because any worker's compensation claim was outside the

---

3. The "employee injury exclusion" provides, in relevant part:

We will not be obligated to make any payment nor to defend any "suit" in connection with any "claim" made against the insured:

8. For "personal injury" or "bodily injury" to:

a. An employee of the insured arising out of and in the course of employment by the insured;

. . . .

c. The spouse ... of that employee ... as a consequence of a . . . . above.

The exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity.

(App.103, 275).

scope of the underlying action, the court held that the employee injury exclusion did not apply and that "[u]nder the plain language of the policy, ... the underlying case falls within Scottsdale's obligation to indemnify the City." *Id.*

We find that the District Court's holding in this regard is erroneous and, contrary to the Court's assertions, ignores the plain language of the Policy. As an initial matter, simply because the Policy covers civil rights claims arising out of law enforcement activities—a point that Scottsdale does not dispute—that does not mean that a policy exclusion cannot apply to bar a subset of those claims. As explained above, the employee injury exclusion, on its face, precludes coverage for precisely the types of claims contained in the underlying action—*i.e.,* claims for injuries to employees arising out of and in the course of their employment. Most significantly, the District Court fails to square its holding that the employee injury exclusion is confined to workers compensation claims with the fact that the Policy's definition of "personal injury" explicitly includes civil rights violations. The District Court also fails to explain why, under its reading of the exclusion, the Policy contains a separate explicit exclusion for any obligations of the insured under a workers' compensation law. (App.89, 261) [4]; *see, e.g., J.C. Penney Life Ins. Co. v. Pilosi,* 393 F.3d 356, 363 (3d Cir.2004) (courts should interpret an insurance policy to avoid ambiguities and give effect to all of its provisions).

In addition to urging that we adopt the District Court's reasoning, Appellees raise several additional arguments as to why the employee injury exclusion does not apply in this case. We have examined these arguments carefully and find that they are without merit.

First, Appellees argue that we should affirm the District Court because the record evidence shows that Scottsdale intended the employee injury exclusion to apply only to workers' compensation claims. We disagree. The record evidence to which Appellees point is extra-contractual. As Appellees themselves note, " '[w]hen construing an insurance policy, [the court's] duty is to ascertain the intent of the parties *as manifested in the language of the insurance policy.'* " Appellees' Br. at 20 (quoting *Nautilus Ins. Co. v. Gardner,* No. Civ. A. 04–1858, 2005 WL 664358, at *4 (E.D.Pa. Mar.21, 2005)) (emphasis added). It is well-established that where, as here, the contractual language at issue is clear and unambiguous, the court should not, as Appellees suggest, look beyond the policy to ascertain the parties' intent. *Steuart v. McChesney,* 498 Pa. 45, 444 A.2d 659, 661 (1982) ("[T]he intent of the parties to a written contract is to be regarded as being embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement.").

Second, Appellees argue that the exclusion does not apply because, although Officer Sollman was acting "in the course of" his employment when he was shot, his injury with respect to the civil rights claims against Appellees did not "arise out

---

**4.** The workers' compensation exclusion is contained in the Common Liability Exclusions and Common Liability Definitions section of the Policy and states as follows:

This policy does not apply to:

. . . .

7. Workers Compensation and Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

(App.89, 261).

of" that employment. Specifically, Appellees argue that the relevant "occurrence" underlying the civil rights claims was not the shooting, but Appellees' alleged failure to develop or maintain adequate policies or customs. Appellees reason that Sollman's injury, to the extent it relates to this failure to develop or maintain adequate policies or customs, could not have "arisen out of" his employment because those actions and failures were unrelated to that employment and predated the shooting.

We disagree. As an initial matter, the term "occurrence" in the Policy appears in the definition of "law enforcement wrongful act" and is relevant to whether coverage is triggered in the first instance. (App.106, 278). The term does not appear in the employee injury exclusion or in the definition of "personal injury." (App.103, 106–07, 275, 278–79). The relevant issue in terms of the employee injury exclusion is whether the "injury" arose out of and in the course of the employee's employment. (App.103, 275). Under Appellees' own definition, "arising out of" one's employment means "causally connected with" that employment. *See* Appellees' Br. at 27 (citing *Forum Ins. Co. v. Allied Sec., Inc.*, 866 F.2d 80, 82 (3d Cir.1989) and *McCabe v. Old Republic Ins. Co.*, 425 Pa. 221, 228 A.2d 901, 903 (1967)). There is no dispute that the March 25, 2005 shooting triggered the underlying action and no indication that Carin Sollman would or could have filed that lawsuit absent the shooting. It defies logic to suggest that the alleged violations of Officer Sollman's civil rights and other injuries stemming from that shooting were not causally connected to his employment as a City of Easton police officer and SWAT team member.

In a further attempt to support the above argument, Appellees note that if the officer shot on March 25, 2005 had happened to be from a different municipality, that officer could have made the exact same civil rights claims as Officer Sollman and the employee injury exclusion would not apply. Thus, according to Appellees, the claims are not causally connected to Sollman's employment. This example is unpersuasive. Again, simply because Scottsdale might have a duty to indemnify and defend Appellees in a similar civil rights action involving a non-employee does not mean that Sollman's injury did not arise out of his employment. If anything, Appellees' example further demonstrates how the Policy's exclusions apply as they were intended—*i.e.*, to preclude coverage for claims that the Policy otherwise would cover.

Next, Appellees disagree that the District Court's interpretation of the employee injury exclusion renders it superfluous in light of the separate policy exclusion for workers' compensation claims. To illustrate, Appellees note that the policy definition of "personal injury" includes "defamation" and that the Workers Compensation Act does not apply to injuries to an employee's reputation. Appellees' Br. at 33 (citing App. 106). Thus, in Appellees' view, a defamation claim is "an example of a factual scenario in which the workers' compensation exclusion would not apply, but the employee injury exclusion would." *Id.* This argument is not only inconsistent with the District Court's holding, it also helps make *Scottsdale's* point—*i.e.*, that the parties did not intend the employee injury exclusion to apply solely to workers' compensation claims. Rather, under the Policy's plain language, and contrary to the District Court's view, the exclusion expressly applies to other claims—such as defamation and civil rights claims—as well.

Finally, Appellees argue that "were Scottsdale's expansive reading of the employee injury exclusion and its application of it to this case accepted, there would be

no place for any municipality to get coverage for situations where a police officer violates the constitutional rights of another police officer." Appellees' Br. at 34. We disagree. As set forth above, the plain language of the Policy supports Scottsdale's reading. Moreover, even if Appellees' argument were relevant, there is no evidence that since the exclusion bars coverage in this case, such coverage is uniformly unavailable or that the City could not have negotiated for such coverage from Scottsdale or another insurer.[5]

Because, under the plain language of the Policy, the claims arising out of Officer Sollman's shooting constitute claims for "personal" or "bodily injury" as the Policy defines those terms, arising out of and in the course of Sollman's employment with the City, the Policy clearly excludes those claims from coverage and the District Court's holding to the contrary is reversed.[6]

## C. *Separation of Insureds Clause*

■ Because we find that the employee injury exclusion applies to bar coverage in this case, at least with respect to the City of Easton's claim, we must address the applicability of the Policy's "separation of insureds" clause to the claims of the individual Appellees, Mitman and Gallaher. Since the District Court found that the exclusion did not apply, it did not reach this argument.

Appellees argue that even if the employee injury exclusion applies to the City's claim, the separation of insureds clause renders it inapplicable to the claims of Mitman and Gallaher. The separation of insureds clause at issue states:

> Except with respect to ... any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:
>
> a. As if each Named Insured were the only Named Insured; and
>
> b. Separately to each insured against whom "claim" is made or "suit" is brought.

(App.258). Specifically, Appellees argue that because the insurance applies "[s]eparately to each insured against whom 'claim' is made or 'suit' is brought," we must read the employee injury exclusion to exclude only claims brought by employees of the particular "insured" being sued. In Appellees' view, because the individual defendants in the underlying action were not Officer Sollman's "employers," the language of the employee injury exclusion in conjunction with the language of the separation of insureds clause renders the exclusion inapplicable to claims asserted against the individual defendants. Appellees' Br. at 35–49. After careful consideration, we agree with Scottsdale that this argument is contrary to the Policy language when read in conjunction with precedential Pennsylvania law.

In *Pennsylvania Manufacturers' Association Insurance Co. v. Aetna Casualty and Surety Insurance Co.*, 426 Pa. 453, 233 A.2d 548 (1967) ("*PMA*"), the primary case on which Scottsdale relies, the dispute centered around the meaning of the word "insured" in an automobile insurance poli-

---

5. To the extent Appellees rely on the doctrine of reasonable expectations in support of their argument, such reliance is misplaced. Among other things, the doctrine does not apply where, as here, the language of a contract is clear and unambiguous. *See, e.g., Frain v. Keystone Ins. Co.*, 433 Pa.Super. 462, 640 A.2d 1352, 1354 (1994).

6. Because we conclude that the Policy's employee injury exclusion bars coverage with respect to all of the underlying claims, we need not address the applicability of the "workers' compensation" exclusion or Scottsdale's other alternative arguments.

cy. The question for the court was whether the employee exclusion clause in the policy excluded liability to an employee of the named insured ("Niehaus") in an action against another insured under the same policy ("Delaware") stemming from an accident in which the Niehaus employee was injured on Delaware property. The exclusion at issue provided that the policy did not apply "to bodily injury of any employee of the Insured." *Id.* at 455, 233 A.2d at 550. The policy also provided that "with respect to the insurance for bodily injury liability ... the unqualified word 'insured' included the 'named insured.'" *Id.* The Pennsylvania Supreme Court rejected Delaware's argument that "insured" as used in the employee exclusion must be confined to mean the particular insured claiming coverage and held that employees of the named insured also fall within the employee exclusion. In affirming the lower court on this point, the Court rejected the defendant-insured's reliance on a separation of insureds clause stating that the term "the insured" is used severally and not collectively. *Id.* at 456, 233 A.2d at 550.

In reaching this conclusion, the court relied heavily on the contract language that defined the word "insured" to include the "named insured." *Id.* at 455, 459, 233 A.2d at 550, 552. The court also noted that the named insured in the case had already covered his employees with a workers compensation policy and thus did not intend coverage for his employees under the automobile insurance policy under the circumstances presented in the case. *Id.* at 457, 233 A.2d at 551.

Here, as in *PMA,* the Policy language unambiguously includes the named insured in the term "insured." Specifically, the preamble of the Public Entity Policy, Law Enforcement Liability Coverage Form, states that "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured...." (App.102). Immediately thereafter, it provides that "[w]ithin this Coverage Form the word 'insured' means any person or organization qualifying as such under SECTION III—LAW ENFORCEMENT LIABILITY—WHO IS AN INSURED." *Id.* Section III of the form, in turn, provides, *inter alia,* that "[e]ach of the following is an Insured: 1 *You* for the activities conducted by the Law Enforcement Department or Agency named in the Law Enforcement Liability Coverage Part Supplemental Declarations." *Id.* at 104 (emphasis added). Thus, it is clear that the unqualified term "insured" in the employee injury exclusion includes the named insured, City of Easton. Under *PMA,* a separation of insureds clause like the one in this case does not modify the meaning of the word "insured" in an employee injury exclusion to mean "the insured seeking coverage" or "the insured being sued." Accordingly, since Sollman was an employee of the City of Easton, the employee injury exclusion applies to the Individual Defendants as well as the City of Easton, and Scottsdale does not have a duty to defend and indemnify those individuals in the underlying action.

To the extent Appellees argue that the separation of insureds clause at issue in this case differs significantly from the severability provision at issue in *PMA,* we disagree. Although the language of the two clauses is not identical, the differences are immaterial.[7] We also do not find any

7. Courts in other cases, including a panel of this Court, similarly have held that "separation of insureds" language virtually identical to the language in the Scottsdale policy is not materially distinguishable from the severabili-

ty language in *PMA. See, e.g., Brown & Root Braun, Inc. v. Bogan Inc.,* 54 Fed.Appx. 542, 547–49 (3d Cir.2002); *N. Wales Water Auth. v. Aetna Life & Cas.,* No. Civ. A. 96–0727, 1996 WL 627587, at **7–8 (E.D.Pa. Oct. 30), *aff'd,*

support for Appellees' argument that *PMA* somehow does not control because, unlike *PMA,* this case involves federal civil rights claims.

Appellees cite to a Pennsylvania Superior Court case, *Luko v. Lloyd's London,* 393 Pa.Super. 165, 573 A.2d 1139 (1990), in support of their contention that the separation of insureds language in the Scottsdale policy renders the employee injury exclusion inapplicable to Mitman and Gallaher. Appellees' Br. at 49. This argument is likewise without merit. Although the *Luko* court held that a policy containing a separation of insureds clause similar to the clause at issue in this case provided coverage for an employee's injuries as long as the injured employee was not an employee of the insured being sued, we disagree with Appellees that *Luko* is any closer to this case than to *PMA* on its facts. We also find the severability clauses in *Luko* and *PMA* materially indistinguishable. To the extent the lower court in *Luko* takes a different view than the court in *PMA,* we are bound to follow the controlling Pennsylvania Supreme Court precedent in *PMA. See McKenna v. Pac. Rail Serv.,* 32 F.3d 820, 825 (3d Cir.1994).

D. *Line of Duty Death Coverage Endorsement*

In addition to the question of Scottsdale's duty to defend and/or indemnify Appellees in the underlying action, the parties dispute whether Scottsdale has a duty to indemnify the City of Easton for any voluntary payments made to the underlying plaintiff for the injuries to Officer Sollman. At issue is the Policy's Line of Duty

Death Coverage Endorsement that provides, *inter alia:*

**LINE OF DUTY DEATH COVERAGE**

This endorsement modifies insurance provided under the following:

**COMMON POLICY CONDITIONS**

**LAW ENFORCEMENT LIABILITY COVERAGE FORM**

1. We will indemnify you for an amount not to exceed $50,000 for voluntary payments made to the family of members of the household of a Law Enforcement Officer who is injured as the result of a felony which occurs during the "policy period":

. . .

(App.108, 280). Scottsdale argues that the District Court erred in failing to address this issue and contends that it has no duty under the Policy to indemnify the City because there is no allegation that the shooting was intentional or felonious. Rather, the Grand Jury report avers that Officer Sollman was killed as the result of negligence or gross negligence. Appellant's Br. at 53–54. Appellees respond that the question of the intentionality of the shooting is factually unsettled and, therefore, Scottsdale's duty to indemnify the City for voluntary line of duty payments cannot be determined until the completion of the underlying action. Appellees' Br. at 51–52.

We agree that Scottsdale's duty, if any, to indemnify the City for voluntary line of duty payments is a separate issue from its

133 F.3d 910 (3d Cir.1997); *Roosevelt's Inc. v. Zurich Am. Ins. Co.,* No. 3505 July Term 2003, 2005 WL 1240698, at *2 (Pa.C.P. May 23, 2005); *see also Transport Indem. Co. v. Liberty Mut. Ins. Co ,* 398 F.Supp. 1026, 1030 n. 3 (E.D.Pa.1975) (finding severability of interests clause did not reflect a decision that the employee exclusion clause must be read to refer only to the "insured being sued"). Although these opinions are not binding on us, we agree with the reasoning therein.

duty to defend and indemnify Appellees in the underlying action and that the District Court erred in failing to address it. We also agree that we do not have sufficient information before us to decide the issue in the first instance.

Accordingly, we will remand this issue to the District Court for resolution.

### IV.

For all of the reasons set forth herein, we find that the District Court erred as a matter of law in ruling that Appellant has a duty to defend and/or indemnify Appellees in the underlying action.

Accordingly, we will REVERSE the judgment of the District Court and remand with directions to enter summary judgment in favor of Scottsdale and against Appellees on this issue. We also direct the District Court to address the issue of Scottsdale's duty, if any, to indemnify the City of Easton under the Policy's Line of Duty Death Coverage Endorsement.