**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3461
_____

VITAMIN ENERGY, LLC,
                                        Appellant

v.

EVANSTON INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-19-cv-03672)
District Judge:  Honorable Joel H. Slomsky
_____

Argued
September 21, 2021

Before:   JORDAN, PORTER, and RENDELL, *Circuit
Judges*

(Filed: January 5, 2022)
_____

Patrick K. Gibson
Ippoliti Law Group
1225 N. King Street – Suite 900
Wilmington, DE   19801

George Schooff   [ARGUED]
18530 Mack Avenue – Suite 481
Grosse Point Farms, MI  48236
        *Counsel for Appellant*

Michael E. DiFebbo, Jr.   [ARGUED]
Gavin Fung
Kennedys CMK
1600 Market Street – Suite 1410
Philadelphia, PA   19103
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Pennsylvania law imposes on insurers a broad duty to defend lawsuits brought against those they insure.  Vitamin Energy, LLC, obtained a policy from Evanston Insurance Company and was subsequently sued by a competitor, the owners of the 5-hour Energy brand, for publishing certain comparative claims and infringing the 5-hour Energy mark in advertising and packaging.  The District Court decided Evanston had no duty to defend.  We think otherwise.  An insured's burden to establish its insurer's duty to defend is light, and Vitamin Energy has carried it.  Read liberally in

favor of coverage, as is required, the 5-hour Energy complaint and the insurance policy impose on Evanston a duty to defend Vitamin Energy in the underlying suit, at least until there is no possibility that 5-hour Energy could prevail against Vitamin Energy on a claim covered by the policy. Likewise, the coverage exclusions raised by Evanston are construed in favor of coverage, and we cannot say, at this point, that they eliminate the duty to defend. Accordingly, we will vacate and remand.

## I.    BACKGROUND

### A.    The Underlying 5-hour Energy Lawsuit Against Vitamin Energy

This case stems from a separate lawsuit in which Vitamin Energy, the plaintiff-appellant here, is the defendant. In June 2019, Vitamin Energy was sued in the United States District Court for the Eastern District of Michigan by International IP Holdings, LLC, and Innovation Ventures, LLC, the owners of trademarks for 5-hour Energy liquid energy shots.[1] In that lawsuit, 5-hour Energy asserts claims against Vitamin Energy under the Lanham Act for trademark infringement, false designation of origin, false advertising, and trademark dilution. It also makes claims under Michigan law for trademark infringement, indirect trademark infringement, and unfair competition.

---

[1] We refer herein to International IP Holdings, LLC, and Innovation Ventures, LLC, collectively and in the singular as "5-hour Energy."

3

Among the wrongs Vitamin Energy has allegedly committed is "false and misleading comparative advertising" about the benefits of Vitamin Energy's products relative to competing products, including 5-hour Energy's, as shown in the following chart from paragraph 40 of 5-hour Energy's complaint:

| | VITAMIN ENERGY | RedBull | Vitamin Water | EmergenC | 5 Hour Energy |
|---|---|---|---|---|---|
| 0 Carbs | ⊙ | | | | ⊙ |
| 0 Sugar | ⊙ | | | | ⊙ |
| 1000 MG of C | ⊙ | | | ⊙ | |
| 100% daily value of vitamin B | ⊙ | | ⊙ | | |
| More energy than 1 cup of coffee | ⊙ | ⊙ | | | ⊙ |
| Tastes great | ⊙ | | ⊙ | | ⊙ |

(J.A. at 280-81 ¶ 40.)[2]  According to paragraph 46 of the 5-hour Energy complaint, the comparative advertisement is "literally false and/or misleading [and] has a tendency to deceive a substantial portion of consumers" in "represent[ing] that [Vitamin Energy's] products contain 1000 MG of Vitamin C and 100% Daily Value of Vitamin B[.]"  (J.A. at 283 ¶ 46.)[3]  And beyond that, the complaint alleges in paragraph 48 that the comparative advertisement "is intended to leave, and does leave, the false and/or misleading impression that, among other

---

[2] In addition to reproducing the chart, paragraph 40 includes other graphics and the following introductory language:

> [Vitamin Energy] also advertises its products with a series of misleading and false statements in commerce, including false and misleading comparative advertising and claims that [Vitamin Energy's] Products provide steroid-like athletic performance enhancement. Examples are shown below[.]

(J.A. at 280-81 ¶ 40.)

[3] Paragraph 46 reads in full:

> [Vitamin Energy's] representation that its products contain 1000 MG of Vitamin C and 100% Daily Value of Vitamin B is literally false and/or misleading, has a tendency to deceive a substantial portion of consumers, the intended audience, and actual audience, and has deceived a substantial portion of consumers, the intended audience, and the actual audience.

(J.A. at 283 ¶ 46.)

5

things, all of [Vitamin Energy's] Products have 1000 MG of Vitamin C and more Vitamin B Vitamins than [5-hour Energy's] Products and that [Vitamin Energy's] Products are superior to other products in the market, including [5-hour Energy's] Products." (J.A. at 283 ¶ 48.)[4]

5-hour Energy also complains of another Vitamin Energy advertisement, one that promises steroid-like performance without the accompanying risks, with this text:

> Many factors influence performance. VitaminEnergy® contains performance-enhancing supplements like Vitamin B12 that help in the production of red blood cells, caffeine to provide energy and CBD as an anti-inflammatory. The synergy provided by these nutrients allow VitaminEnergy® to deliver improved performance without the use of harmful steroids or steroid-like compounds.

---

[4] Paragraph 48 reads in full:

[Vitamin Energy's] representation that its products contain 1000 MG of Vitamin C and 100% Daily Value of Vitamin B is intended to leave, and does leave, the false and/or misleading impression that, among other things, all of [Vitamin Energy's] Products have 1000 MG of Vitamin C and more Vitamin B Vitamins than [5-hour Energy's] Products and that [Vitamin Energy's] Products are superior to other products in the market, including [5-hour Energy's] Products.

(J.A. at 283 ¶ 48.)

(J.A. at 281 ¶ 40.) Like the complained-of comparative advertisement, those claims of "steroid-like" performance are, according to 5-hour Energy, false and misleading, and they deceive consumers.

Finally, 5-hour Energy alleges that Vitamin Energy uses a statement promoting the ability of its products to provide "up to 7 HOURS of Energy" and does so in language and stylized script that is confusingly similar to, and hence infringes on, 5-hour Energy's registered trademarks. (J.A. at 275-80.) 5-hour Energy offers a comparison of several of its products to the "7 HOURS of Energy" statement to make its point:



(J.A. at 275 ¶ 22, 276-77 ¶ 29.)[5]

## B.      Vitamin Energy's Lawsuit Against Evanston

Vitamin Energy believes that the 5-hour Energy lawsuit is covered by its insurance policy with Evanston ("the Policy"). As detailed below, the Policy generally imposes on Evanston a duty to defend claims for an "Advertising Injury[,]" subject to certain coverage exclusions. (J.A. at 184-85.) A few days after 5-hour Energy filed its lawsuit, Vitamin Energy's insurance agent notified Evanston of the suit and requested coverage under the Policy. Evanston disclaimed coverage. It said that the 5-hour Energy complaint does not allege an Advertising Injury or any other injury covered by the Policy, and that, even if it did, certain coverage exclusions apply that excuse coverage.

After some further fruitless efforts to get Evanston to acknowledge coverage, Vitamin Energy took its insurer to court. Filing in the Pennsylvania Court of Common Pleas, it sought a declaratory judgment that the 5-hour Energy complaint alleges an Advertising Injury as defined by the Policy and that no coverage exclusions apply. It also asserted

---

[5] In addition to reproducing the images of 5-hour Energy's products, paragraph 22 includes the following introductory language: "Examples of [5-hour Energy's] Products are shown below[.]" (J.A. at 275 ¶ 22.) In addition to reproducing the image of Vitamin Energy's products and slogan, paragraph 29 includes other versions of the same statement and the following introductory language: "Examples of [Vitamin Energy's] infringing, misleading, and confusingly similar marks are shown below[.]" (J.A. at 276-77 ¶ 29.)

8

a breach-of-contract claim and a claim of bad-faith denial of coverage under 42 Pa. Cons. Stat. § 8371. Evanston removed the case to the District Court, and Vitamin Energy then filed two amended complaints, which Evanston answered. After the parties cross-moved for judgment on the pleadings, the District Court granted Evanston's motion, holding that 5-hour Energy's complaint does not allege an Advertising Injury within the meaning of that term in the Policy.

Vitamin Energy has timely appealed.

## II. DISCUSSION[6]

### A. Advertising Injury

Under Pennsylvania law,[7] "[a]n insurer's duty to defend is broader than its duty to indemnify[.]" *Erie Ins. Exch. v. Moore*, 228 A.3d 258, 265 (Pa. 2020); *see also Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010) (observing that the duty to defend extends not only to "meritorious actions" but also to "groundless, false, or

---

[6] The District Court had jurisdiction under 28 U.S.C. §§ 1332(a) and 1441. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. "A motion for judgment on the pleadings under Rule 12(c) is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (internal quotation marks and citation omitted). District courts "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party, and may not grant the motion unless the movant clearly establishes that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law." *Id.* (internal quotation marks and citation omitted). We review that determination de novo. *Mid-Am. Salt, LLC v. Morris Cty. Coop. Pricing Council*, 964 F.3d 218, 226 (3d Cir. 2020). "[I]nterpretation of [an insurance policy] is a question of law over which we exercise plenary review." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 674 (3d Cir. 2016).

[7] The parties do not dispute that Pennsylvania law applies to a determination of the scope of the Policy.

fraudulent" ones).  The duty to defend exists "if the factual allegations of the [underlying] complaint on its face encompass an injury that is actually or potentially within the scope of the policy." *Babcock & Wilcox Co. v. Am. Nuclear Insurers*, 131 A.3d 445, 456 (Pa. 2015) (citation omitted).  "Whether a claim is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the [underlying] complaint." *Moore*, 228 A.3d at 265 (internal quotation marks and citation omitted).  We must read the policy "as a whole" and construe terms according to their "plain meaning[.]" *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 676 (3d Cir. 2016) (internal quotation marks and citation omitted).  Although the insured bears the burden of establishing coverage, *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206 (3d Cir. 2001) (applying Pennsylvania law), the underlying complaint's allegations are assumed to be true and are liberally construed in favor of coverage.  *Ramara*, 814 F.3d at 673-74; *Moore*, 228 A.3d at 265.

Starting with "the four corners of the insurance contract[,]" *Moore*, 228 A.3d at 265 (citation omitted), the Policy here provides that Evanston "shall have the right and duty to defend and investigate any Claim to which coverage under this policy applies." (J.A. at 192.)  One such covered claim is an "Advertising Injury[.]"[8]  (J.A. at 184-85.)  The Policy defines Advertising Injury as an injury "arising out of oral or written publication of material that libels or slanders …

---

[8] The Policy requires Evanston to pay "all sums in excess of the Deductible … which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured … for … Advertising Injury[.]" (J.A. at 184.)

11

a person's or organization's products, goods or operations or other defamatory or disparaging material, occurring in the course of the Named Insured's Advertisement." (J.A. at 185.) The parties here agree that the term "disparaging material," as used in the Policy, includes, at a minimum, an injurious false statement about another's goods. *See Pro Golf Mfg., Inc. v. Trib. Rev. Newspaper Co.*, 809 A.2d 243, 246 (Pa. 2002) (observing that "the publication of a disparaging statement concerning the business of another is actionable where[,]" in addition to other elements, "the statement is false" and "pecuniary loss does in fact result").[9]

Their disagreement lies in whether 5-hour Energy's complaint alleges that Vitamin Energy's comparative advertising contains a false or misleading statement about 5-hour Energy's products or only a falsehood about Vitamin Energy's own products. Vitamin Energy argues that 5-hour Energy's complaint includes an allegation that the comparative advertising asserts a falsehood about 5-hour Energy's products. That particular allegation is that Vitamin Energy's "representation that its products contain … 100% Daily Value of Vitamin B is intended to leave, and does leave, the false and/or misleading impression that, among other things, all of

---

[9] *See also Disparagement*, Black's Law Dictionary (10th ed. 2014) (defined, in torts context, as "false and injurious statement that discredits or detracts from the reputation of another's … product"). Because, as we explain, the agreed-upon minimum reach of the term "disparaging material" is sufficient to create a duty to defend Vitamin Energy in 5-hour Energy's lawsuit, we need not consider whether the parties intended to define the term more broadly.

[Vitamin Energy's] Products have … more Vitamin B Vitamins than [5-hour Energy's] Products[.]" (J.A. at 283 ¶ 48.) The focus of that allegation is the comparative chart referenced above, but it is also consistent with 5-hour Energy's other allegations in paragraph 48, as well as those in paragraph 46, of its complaint.[10] Evanston argues, however, that the allegation refers only to Vitamin Energy's products. Similarly, Evanston asserts that all other allegations in 5-hour Energy's complaint pertain only to Vitamin Energy's own products, such as the claim that Vitamin Energy's "representation that its products contain 1000 MG of Vitamin C … is literally false and/or misleading," because "the majority of [Vitamin Energy's] Products do not contain 1000 MG of Vitamin C and/or any Vitamin C at all." (J.A. at 283 ¶¶ 46-47.)

Regardless of what ingredients Vitamin Energy's products might have, the company itself has the better of this dispute. When construed liberally in favor of coverage, *Ramara*, 814 F.3d at 673, the allegations of the underlying 5-hour Energy complaint, including paragraphs 40 and 48, as well as paragraph 46, are best read as saying not only that Vitamin Energy's own products contain 100% of the daily recommended value of vitamin B, but also that 5-hour Energy's products do not. That latter representation is clearly about 5-hour Energy's products, not Vitamin Energy's, and 5-hour Energy asserts that it is false. The underlying complaint is thus distinguishable from the complaints at issue in cases relied upon by Evanston. *Cf. Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742 (3d Cir. 1999) (concluding that the alleged advertising injury said nothing disparaging about the plaintiff's product, but that defendant merely used

---

[10] *See supra* notes 3-4.

plaintiff's good reputation to pass off its own goods). Put simply, the underlying complaints in those cases did not allege a false statement about a competitor's product, but 5-hour Energy's complaint did.

True, other allegations in 5-hour Energy's complaint pertain only to Vitamin Energy's statements about Vitamin Energy's own products. And, as noted above, the allegation that does pertain to 5-hour Energy's products also references the vitamin content of Vitamin Energy's products. But it goes further, making an allegedly false representation about the vitamin content of 5-hour Energy's products as well.[11] We cannot focus on the former and ignore the latter, for the underlying complaint need only contain "at least one allegation that falls within the scope of the policy's coverage [for] the duty to defend [to be] triggered[.]" *Leithbridge Co. v. Greenwich Ins. Co.*, 464 F. Supp. 3d 734, 739 (E.D. Pa. 2020)

---

[11] Of course, had Vitamin Energy cabined its comparative advertising efforts to simple puffery, claims of relative superiority over other competitors, or claims about competitors that its competitors did not allege were false or misleading, then no duty to defend would arise because it is well established that such claims are not actionable. *See, e.g.*, *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 922 (3d Cir. 1990) (explaining that "[m]ere puffing … is not actionable"); *see also* Restatement (Second) of Torts § 649 (Am. Law Inst. 1977) (providing that "[a] competitor is conditionally privileged to make an unduly favorable comparison of the quality of his own … things, with the quality of … competing … things … if the comparison does not contain false assertions of specific unfavorable facts").

(citing *Gen. Accident Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997)).

For a similar reason, we reject Evanston's argument that coverage should be denied because the "gravamen" of 5-hour Energy's complaint is that Vitamin Energy's slogan promoting "up to 7 HOURS of Energy" (J.A. at 276-77 ¶ 29) amounts to trademark infringement. (Answering Br. at 33.) Even assuming that 5-hour Energy is more concerned with trademark infringement than its other claims, the question for us is "whether *a* claim against an insured is potentially covered[,]" not whether the most salient claim is potentially covered. *Jerry's Sport Ctr.*, 2 A.3d at 541 (emphasis added). Here, the alleged comparative advertising injury is potentially covered.

In reaching that conclusion, we note again that the duty to defend is broader than the duty to indemnify. The duty "is not limited to meritorious actions; it even extends to actions that are groundless, false, or fraudulent as long as there exists the possibility that the allegations implicate coverage." *Id.* (internal quotation marks and citation omitted). The 5-hour Energy complaint, when read in favor of coverage, raises allegations that are "potentially within the scope of the policy." *Moore*, 228 A.3d at 265 (emphasis omitted) (internal quotation marks and citation omitted). The truth of those allegations, their merits under applicable state and federal law, and Evanston's ultimate duty to indemnify are "not at issue when determining whether there is a duty to defend[.]" *Id.* We therefore do not opine on those issues, stopping at the conclusion that 5-hour Energy's complaint raises the possibility of an Advertising Injury as defined in the Policy.

15

## B.     Coverage Exclusions

Evanston argues that, even if 5-hour Energy's complaint alleges an Advertising Injury, certain Policy exclusions apply and thus bar coverage.[12]  As the insurer, Evanston bears the burden of establishing the applicability of exclusions, and we construe the exclusions in favor of coverage.  *Cosenza*, 258 F.3d at 206-07.  Based on the presently required reading of 5-hour Energy's complaint, with all inferences being in favor of coverage, Evanston has not carried its burden, at least not insofar as it seeks to avoid the duty to defend at this stage.

Evanston first points to what it calls the Policy's "Intellectual Property" exclusion.  (Answering Br. at 36-37.) That exclusion eliminates coverage for

> any Claim based upon or arising out of Personal Injury or Advertising Injury arising out of piracy, unfair competition, the infringement of copyright, title, trade dress, slogan, service mark, service name or trademark, trade name, patent, trade secret or other intellectual property right[.]

---

[12] The District Court did not reach Evanston's exclusion arguments, which were timely raised below, because it held that 5-hour Energy's complaint does not allege an Advertising Injury.  Because "our interpretation of [an insurance policy] is a question of law over which we exercise plenary review," *Ramara*, 814 F.3d at 674, we may address the applicability of the exclusions in the first instance.  We do so in the interest of judicial economy.

(J.A. at 191.) Although 5-hour Energy's complaint does allege trademark infringement, Vitamin Energy does not seek coverage based on that claim. Rather, the alleged wrong that Vitamin Energy relies on to invoke the duty to defend is the comparative advertisement supposedly misrepresenting the vitamin content of 5-hour Energy's products, and that potentially does fall within the scope of an Advertising Injury as defined in the Policy. An exclusion that may apply to only some allegations does not excuse Evanston from its obligation to defend the entire lawsuit, which obligation continues "as long as at least one claim is potentially covered by the policy." *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 521 (3d Cir. 2012) (citation omitted).

Even so, Evanston argues that the Intellectual Property exclusion's "unfair competition" language bars coverage for 5-hour Energy's claim for unfair competition under Michigan law. (J.A. at 191.) Perhaps the claim for disparagement in 5-hour Energy's lawsuit might be considered a claim for "unfair competition" under the Michigan statute, which is cited in the underlying complaint. Mich. Comp. Laws § 445.903(1)(f);[13] *Action Auto Glass v. Auto Glass Specialists*, 134 F. Supp. 2d 897, 899 (W.D. Mich. 2001). But, as we have observed elsewhere, the term "unfair competition" does not have a singular, unambiguous meaning. *Granite State Ins. Co. v. Aamco Transmissions, Inc.*, 57 F.3d 316, 319 (3d Cir. 1995). In context, "unfair competition" in the Intellectual Property

---

[13] Although 5-hour Energy's complaint asserts a cause of action for "Unfair Competition under MCL § 445.903" (J.A. at 294), that statute is actually titled "Unfair, unconscionable, or deceptive methods, acts, or practices; promulgation of rules[.]" Mich. Comp. Laws § 445.903.

17

exclusion gains meaning from its neighbors – "piracy, … the infringement of copyright, title, trade dress, slogan, service mark, service name or trademark, trade name, patent, trade secret or other intellectual property right[.]" (J.A. at 191.) *See Post*, 691 F.3d at 520 ("Words are known by the company they keep." (quoting *Northway Vill. No. 3, Inc. v. Northway Props., Inc.*, 244 A.2d 47, 50 (Pa. 1968))).  As used in the Policy, those terms refer narrowly and consistently to intellectual property rights, and so should "unfair competition[.]"  *Cf. JAR Lab'ys LLC v. Great Am. E & S Ins. Co.*, 945 F. Supp. 2d 937, 945-46 (N.D. Ill. 2013) (construing "unfair competition" as "targeting a narrow subset of intellectual property violations that does not include [underlying] false advertising and related claims").  The term thus does not necessarily bar coverage based on allegations supporting a potential disparagement claim under Michigan law.  Indeed, if the exclusion did bar coverage because of allegations supporting a potential disparagement claim, it would arguably render the Policy's coverage of injury from "disparaging material" (J.A. at 185) a nullity, which we doubt the parties intended.  In any event, the duty to defend is not defeated at this juncture by Evanston's preferred reading of Michigan law.

Next, Evanston argues that the "Incorrect Description" and "Failure to Conform" exclusions bar coverage based on claims against Vitamin Energy for its representations about its own products' "steroid-like" performance and vitamin content. (Answering Br. at 38-39.)  The Incorrect Description exclusion bars coverage for "any Claim based upon or arising out of Advertising Injury arising out of a mistake in advertised price or incorrect description of any product, good or operation[.]" (J.A. at 191.)  The Failure to Conform exclusion bars coverage for "any Claim based upon or arising out of the failure of

18

products, goods or services to conform with any statement of quality or performance made in the Named Insured's Advertisement." (J.A. at 191.) Relying on other cases interpreting similar provisions, Evanston asserts that the exclusions pertain to descriptions of the insured's own products. Be that as it may, as discussed above, it is Vitamin Energy's alleged misrepresentation of the ingredients in 5-hour Energy's products, not Vitamin Energy's own products, that creates the possibility of coverage. *See supra* Section II.A. Accordingly, the exclusions do not affect Evanston's duty to defend the lawsuit. *See Post*, 691 F.3d at 521 ("This exclusion would only excuse [the insurer's] duty to defend [the insured] if the possibility of [the underlying plaintiff's] recovery could be confined solely to [the excluded claim]."). Moreover, as with the Intellectual Property exclusion, if the Incorrect Description and Failure to Conform exclusions were read broadly to encompass allegations supporting a potential disparagement claim, then the exclusions would render the Policy's coverage for injury arising out of "disparaging material" a nullity, which again we doubt the parties intended.

Finally, Evanston refers to two "Knowing" exclusions, arguing that they bar coverage for 5-hour Energy's claims. (Answering Br. at 39-41.) Those two exclusions bar coverage for the following:

> [A]ny Claim based upon or arising out of Personal Injury or Advertising Injury caused by or at the direction of the Insured with the knowledge that the act would violate the rights of another and would inflict Personal Injury or Advertising Injury; [or]

19

> [A]ny Claim based upon or arising out of Personal Injury or Advertising Injury arising out of the oral or written publication of material, if done by or at the direction of the Insured with the knowledge of its falsity[.]

(J.A. at 191.) Evanston cites 5-hour Energy's allegation that Vitamin Energy infringed on 5-hour Energy's trademarks with actual knowledge that it was doing so. But again, Vitamin Energy seeks coverage based on a different claim: its allegedly false or misleading representation about the vitamin content of 5-hour Energy's products. Vitamin Energy's alleged knowledge of trademark infringement does not eliminate coverage for a disparagement claim, and so does not eliminate the duty to defend. *Post*, 691 F.3d at 521.

We do not intend to signal how the coverage dispute here should ultimately be decided. As already indicated, we are focused now solely on the duty to defend. In that context, only the supporting "factual allegations contained in the [underlying] complaint" are considered. *Cf. Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745-46 (Pa. 1999) (where factual allegations in complaint made clear that insured had knowledge of danger, applying "knowing endangerment" coverage exclusion even though complaint asserted only negligence claims). Discovery may uncover evidence that Vitamin Energy published the comparative advertisement with knowledge of a falsehood or a resulting injury. *See Moore*, 228 A.3d at 265 (observing that discovery can narrow a case to be clearly outside of coverage, thus terminating the duty to defend). For now, however, we cannot say that the duty to defend is defeated by the Knowing exclusions.

## III.    CONCLUSION

For the foregoing reasons, we will vacate the order of the District Court and remand for further consideration of the case consistent with this opinion.