**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2179
_____

DEREK SLAUGHTER; GABRIEL CAMPANA; CITY OF WILLIAMSPORT,
Appellants

v.

THE CHARTER OAK INSURANCE COMPANY;
STATE NATIONAL INSURANCE COMPANY, INC.;
STEVEN HELM
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 4-21-cv-01284)
District Judge: Honorable Matthew W. Brann
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on March 12, 2024

Before: BIBAS, MONTGOMERY-REEVES, and ROTH, *Circuit Judges*.

(Opinion filed May 15, 2024)
_____

OPINION[*]
_____

---

[*]This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

MONTGOMERY-REEVES, *Circuit Judge.*

In 2021, Steven Helm sued the City of Williamsport, its current mayor, Derek Slaughter, and its former mayor, Gabriel Campana (collectively, the "City"). This was Helm's third lawsuit against the City. In response, the City brought an action seeking a declaratory judgment that Charter Oak Insurance Company must defend and indemnify the City against Helm's third lawsuit. The District Court held that Charter Oak had no duty to defend or indemnify the City against Helm's third lawsuit and granted Charter Oak's motion for judgment on the pleadings. For the reasons below, we will affirm.

I.      BACKGROUND[1]

In 2017, Steven Helm, a Williamsport police officer, and the highest-ranking representative of the police union, sued the City of Williamsport, the Williamsport Police Department, and the former Williamsport police chief ("*Helm I*"). Helm alleged that they violated his First Amendment rights by retaliating against Helm for his union activities. In 2018, Helm filed a second suit raising the same claim based on similar conduct ("*Helm II*"). In July 2019, the parties settled *Helm I* and *Helm II*.

On April 15, 2021, Helm filed a third suit against the City, again alleging violations of his First Amendment rights ("*Helm III*"). This time, Helm alleged that between December 2018 and December 2020, the City denied him promotions because of his prior lawsuits, *Helm I* and *Helm II*. Helm brought three claims under 42 U.S.C. § 1983, alleging that "[t]he speech contained within [his] prior lawsuits . . . was a

---

[1]  We write for the benefit of the parties and recite only essential facts.

substantial or motivating factor in [the City's] decision not to promote [him]."  App. 590.

Beginning on January 1, 2019, the City contracted with Charter Oak for public entity employment-related practices liability insurance coverage (the "Policy").  Charter Oak agreed to defend and cover any "'employment loss'. . . if . . . [t]he 'employment loss' is caused by a 'wrongful employment practice offense.'"  App. 929.  The Policy defines "wrongful employment practice offense" to include "harassment," "retaliatory action," or "wrongful . . . failure to promote."  *Id.* at 939.  But Charter Oak only agreed to defend and cover such claims if "first made or brought against [the City] . . . during the [P]olicy period."  *Id.* at 929–30.  And claims that

> seek damages because of "employment loss" caused by the same "wrongful employment practice offense" or "related wrongful employment practice offenses" will be deemed to have been first made or brought against [the City] at the time the first of those claims or "suits" is first made or brought against [the City].

*Id.* at 930.  "Related wrongful employment practice offenses" are "two or more 'wrongful employment practice offenses' that have as a common connection, tie or link any fact, circumstance, situation, event, transaction, cause, or series of related facts, circumstances, situations, events, transactions or causes."  *Id.* at 939.

The City submitted a claim based on *Helm III* to Charter Oak, seeking coverage for the lawsuit.  Charter Oak denied coverage.  Charter Oak concluded that *Helm III* was a "related wrongful employment practices offense" based on *Helm I* and *II*, meaning that it was deemed to have been brought when *Helm I* was first brought against the City, which was before coverage under the Policy started.

3

The City then sued Charter Oak, Helm, and others, seeking a declaration that Charter Oak owed a duty to defend and indemnify the City in *Helm III*.[2] Charter Oak and the City cross-moved for judgment on the pleadings. Helm did not file any briefing related to the motions for judgment on the pleadings. The District Court granted Charter Oak's motion and dismissed the City's complaint. The City timely appealed.

## II.    DISCUSSION[3]

On appeal, the City argues that the District Court erred in granting Charter Oak's motion for judgment on the pleadings and that, at the very least, Charter Oak has a duty

---

[2] The City also sued State National Insurance Company based on its denial of coverage for *Helm III*. The City has not appealed the District Court's rulings on State National's duty to defend or indemnify because of settlement negotiations with State National. We therefore do not discuss State National or the District Court's related ruling further.

[3] The District Court had jurisdiction over this case under 28 U.S.C. § 1332. We have jurisdiction over this appeal under 28 U.S.C. § 1291. We review a district court's ruling on a motion for judgment on the pleadings de novo. *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 196 (3d Cir. 2019). "A motion for judgment on the pleadings under Rule 12(c) 'is analyzed under the same standards that apply to a Rule 12(b)(6) motion.'" *Id.* at 195 (quoting *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)). "[A] court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." *Bibbs v. Trans Union LLC*, 43 F.4th 331, 339 (3d Cir. 2022) (quoting *Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 390 (3d Cir. 2012). "[I]n deciding a motion for judgment on the pleadings, a court may only consider 'the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.'" *Wolfington*, 935 F.3d at 195 (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)). Finally, the parties do not dispute that Pennsylvania law applies and under Pennsylvania law, the "interpretation of an insurance policy is a question of law that we will review de novo." *Hanover Ins. Co. v. Urb. Outfitters, Inc.*, 806 F.3d 761, 764–65 (3d Cir. 2015) (quoting *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006)).

4

to defend it in *Helm III*.[4]

Charter Oak has a duty to defend "if the factual allegations of [Helm's] complaint on its face encompass an injury that is actually or potentially within the scope of the [P]olicy." *Vitamin Energy, LLC v. Evanston Ins. Co.*, 22 F.4th 386, 392 (3d Cir. 2022) (quoting *Babcock & Wilcox Co. v. Am. Nuclear Insurers*, 131 A.3d 445, 456 (Pa. 2015)). "Whether [the City's] claim is potentially covered is answered by comparing the four corners of [its Policy] to the four corners of [Helm's] [underlying] complaint." *Id.* (final alteration in original) (citing *Erie Ins. Exch. v. Moore*, 228 A.3d 258, 265 (Pa. 2020)). If the factual allegations in *Helm III* assert an injury potentially within the scope of the Policy, Charter Oak must defend the City. *Id.*

First, we turn to the four corners of the Policy. *Id.* We read the Policy "as a whole" and give its terms their "plain meaning." *Id.* (quoting *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 676 (3d Cir. 2016)). "Where the language of an insurance policy is clear and unambiguous, a court must enforce that language." *Am. Auto Ins. Co. v. Murray*, 658 F.3d 311, 321 (3d Cir. 2011) (citing *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999)). But "[a]mbiguous provisions in an insurance policy must be construed against the insurer and in favor of the insured; any reasonable interpretation offered by the insured, therefore, must control." *Id.* (quoting *Med. Protective Co.*, 198

---

[4] As the City acknowledges that, under Pennsylvania law, the duty to defend is broader than the duty to indemnify. *Vitamin Energy, LLC v. Evanston Ins. Co.*, 22 F.4th 386, 392 (3d Cir. 2022) (citing *Erie Ins. Exch. v. Moore*, 228 A.3d 258, 265 (Pa. 2020)). Because we conclude that Charter Oak has no duty to defend, we also conclude it has no duty to indemnify.

F.3d at 104).

Charter Oak agreed to cover "related employment protected offenses" if the claim was first made or brought against the City during the Policy period, *i.e.*, on or after January 1, 2019. But the Policy does not cover such claims first made before January 1, 2019. The Policy defines "related employment practice offenses" broadly as "two or more 'wrongful employment practice offenses' that have as a common connection, tie or link any fact, circumstance, situation, event, transaction, cause, or series of related facts, circumstances, situations, events, transactions or causes." App. 939. The Policy therefore does not cover wrongful employment practice offenses if such offenses occurred before coverage began and "have as a common connection . . . any fact, circumstance, situation, event, transaction, cause" or series of the same, with a claim made during the policy period. *Id.* So, under the Policy, Charter Oak does not have a duty to defend if *Helm I* and *Helm II* have as a common connection any fact, circumstance, or event or series of facts, circumstances, or events to *Helm III*.

Next, we turn to the complaint in *Helm III*. We examine the allegations in *Helm III*, assuming their truth and ensuring they are liberally construed in favor of the City. *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999). In *Helm III*, Helm contends that *Helm I* and *Helm II* serve as the predicate for his current First Amendment claims. Specifically, in both *Helm I* and *Helm II*, Helm alleged that he "engaged in protected activity" because of his role as union president and by "participating in union activities[,]" and the City and City employees retaliated against him as a result. App. 489, 500. Likewise, in both *Helm I* and *II*, Helm alleged that the

6

defendants "have openly and repeatedly expressed hostility towards Union activities," including those by Helm. *Id.*

In *Helm III*, Helm alleges that his "speech contained" within *Helm I* and *II*, where he alleges retaliation based on his union activities, was a "substantial or motivating factor" in the City's decision not to promote him. App. 590; *see also id.* at 593 (alleging that Helm's prior lawsuits were a "substantial or motivating factor in the [City's] retaliatory act of refusing to consider [Helm] for [a promotion]"); *id.* at 594 (same). Thus, Helm's claims that the City retaliated against him for having filed *Helm I* and *Helm II* connect the retaliatory actions alleged in *Helm III* to the retaliatory action alleged in the earlier lawsuits. And there is no dispute that *Helm I* and *Helm II*, which were filed in 2017 and 2018, respectively, occurred before the coverage period of the Policy began. Accordingly, Charter Oak has no duty to defend the City against *Helm III*. The City's arguments to the contrary are unconvincing.

First, the City argues that Helm's claims in *Helm III* "are not related to the previous litigation . . . as that litigation has been settled." Opening Br. 9. But the City does not explain how a settlement of *Helm I* and *II* means that they are not factually related to *Helm III*. Similarly, the City asserts that the Policy covers *Helm III* because "the fact pattern in [*Helm III*] is distinct enough from the previous litigation" and *Helm III* contains new factual allegations. *Id.* at 9–10. This argument, however, ignores the actual language of the Policy, which defines "related wrongful practice offenses" as "two or more 'wrongful employment practice offenses' that have as a common connection, tie or link *any* fact, circumstance, situation, event, transaction, cause, or series of related

7

facts, circumstances, situations, events, transactions or causes." App. 939 (emphasis added).

Pointing to *Rite Aid Corp. v. Liberty Mut. Fire Ins. Co.*, 414 F. Supp. 2d 508 (M.D. Pa. 2005), the City also argues that the term "related" "implies a clear and unattenuated connection between the 'facts, circumstances, situations, events, transactions or causes' of the different wrongful employment offenses[;]" thus, the City contends, "[a] simple connection separated by several degrees of relevancy is not sufficient." Reply Br. 3–4. The City's argument ignores the plain language of the Policy. The Policy's use of the word "related" does not require an "unattenuated connection." Instead, the Policy only requires a "common connection" to "*any* fact, circumstance, situation, event, transaction, [or] cause." App. 939 (emphasis added).

*Rite Aid* also does not advance the City's point. In *Rite Aid*, the district court addressed whether a fraudulent inducement claim, predicated on facts that occurred before the employee's hiring, fell within that policy's exclusion for "employment-related practices." 414 F. Supp. 2d at 515–516. The policy at issue contained several exclusions, including an exclusion for refusal-to-employ claims and the exclusion for "employment-related practices." *Id.* at 515. The court concluded that interpreting "employment-related practices" to include claims before employment began would render the provision excluding refusal-to-employ claims superfluous. *Id.* Thus, the court held that the fraudulent inducement claim was not excluded from the policy as an "employment-related practice." *Id.* at 516. The City has not explained how our reading of the Policy would render any portion of it superfluous such that we should read the

8

Policy differently.[5]

In sum, the Charter Oak policy does not cover *Helm III* because it falls under the broadly defined phrase "related wrongful practice offenses" based on the common connection to "facts, circumstances, [and] events" shared with *Helm I* and *II*. And the *Helm I* and *II* lawsuits, and the claims made therein, were first made before coverage began under the Policy. Accordingly, Charter Oak has no duty to defend the City in *Helm III*.

## III.    CONCLUSION

For the reasons discussed above, we will affirm the District Court's judgment.

---

[5] Helm filed a brief, urging us to reverse the District Court's grant of motion for judgment on the pleadings in favor of Charter Oak. But Helm did not participate in the briefing on the cross-motions for judgment on the pleadings. Thus, Helm has forfeited the arguments he raised for the first time on appeal absent "exceptional circumstances." *See Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 416 (3d Cir. 2011); *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017). And Helm provides no reason to excuse this forfeiture, nor do we find any. Accordingly, we will not consider Helm's arguments raised for the first time on appeal.