**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 23-1754

————————

CRUM & FORSTER SPECIALTY INSURANCE COMPANY,

v.

DETECT TANK SERVICES, LLC; MOTT TANK INSPECTION, INC.;
ALDEN AYERS; DEBORAH AYERS

DETECT TANK SERVICES, LLC; MOTT TANK INSPECTION, INC.,

Appellants

————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. No. 2-22-cv-00542)
District Judge: Honorable Gerald J. Pappert

————————

Submitted under Third Circuit L.A.R. 34.1(a)
on March 11, 2024

Before: BIBAS, MONTGOMERY-REEVES and ROTH, <u>Circuit Judges</u>

(Opinion filed August 19, 2024)

_____

OPINION[*]

_____

ROTH, Circuit Judge

Detect Tank Services, LLC (Detect) and Mott Tank Inspection, Inc. (Mott) appeal the District Court's order granting Crum & Forster Specialty Insurance Company (CFSIC)'s motion for judgment on the pleadings. For the reasons that follow, we will affirm the District Court's order.

I.      Background

A.      The Underlying Lawsuits Against Detect and Mott

On June 9, 2015, Mott inspected a cluster of gas tanks at Joseph Vigilante's gas station. On June 12, 2018, one of the tanks exploded, killing Vigilante and seriously injuring his employee, Frank Tomasiello.

Vigilante's executrix and Tomasiello each sued Detect and Mott in the Philadelphia County Court of Common Pleas, alleging that Detect and Mott's negligence caused Vigilante's death and Tomasiello's injuries.[1] While neither avers that Detect was involved in the 2015 inspection, both assert that Detect "is the successor entity and/or purchased, subsumed, integrated, and/or is otherwise responsible for the assets and liabilities of []

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] _See Crum & Forster Specialty Ins. Co. v. Detect Tank Servs., LLC_, 2023 WL 2588437, at *1 (E.D. Pa. Mar. 21, 2023).

2

Mott."[2] CFSIC, which insured Detect at the time of the explosion, agreed to defend Detect in both suits, subject to a full reservation of rights.

### B. CFSIC's Lawsuit Against Detect and Mott

Two years later, while the state court suits were underway, CFSIC sought a declaratory judgment in the federal District Court, claiming that it had no duty to defend Detect or Mott in either suit. In response, Detect and Mott sought a declaration that CFSIC did have such a duty and counterclaimed that it had acted in bad faith by attempting to disclaim its duty. After the parties cross-moved for judgment on the pleadings, the District Court granted CFSIC's motion, holding that neither Vigilante's nor Tomasiello's complaint had triggered CFSIC's duty to defend Detect or Mott.[3] Detect and Mott appealed.

## II. Jurisdiction and Standard of Review

The District Court had subject matter jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over judgments on the pleadings entered under Rule 12(c) of the Federal Rules of Civil Procedure.[4] Under

---

[2] Appx. 0053 ¶ 22 (Vigilante Complaint); Appx. 0178 ¶ 24 (Tomasiello Complaint).

[3] *See Crum & Forster*, 2023 WL 2588437, at \*3-4. Having determined there was no coverage under the Policy, the District Court also held that CFSIC had not acted in bad faith in seeking a declaratory judgment. *Id*. at \*5.

[4] *Fed Cetera, LLC v. Nat'l Credit Servs., Inc.*, 938 F.3d 466, 469 n.7 (3d Cir. 2019); *see also Hanover Ins. Co. v. Urb. Outfitters, Inc.*, 806 F.3d 761, 764 (3d Cir. 2015) ("We review *de novo* an order granting judgment on the pleadings[.]") (internal citation omitted).

Pennsylvania law, "[t]he interpretation of an insurance policy is a question of law that we [] review *de novo*."[5]

### III. Analysis[6]

We adhere to Pennsylvania's "four corners" rule when determining whether an insurer has a duty to defend an insured in a suit brought by a third party.[7] We start by ascertaining "the scope of the policy's coverage," and then examine the underlying complaint against the insured to see if it alleges facts "that would support a recovery covered by the policy."[8] If it does, "then coverage is triggered" along with the insurer's "duty to defend until such time that the claim is confined to a recovery that the policy does not cover."[9] Factual allegations in the underlying complaint "are assumed to be true and are liberally construed in favor of coverage."[10] Because neither of the underlying

---

[5] *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006).

[6] A court analyzes a Rule 12(c) motion under the same standards that apply to a Rule 12(b)(6) motion. *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019). "Consequently, the court must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party," *id*., and may only grant the motion "if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law." *Fed Cetera*, 938 F.3d at 469 n.7 (internal citations and quotations omitted); *see also* Fed. R. Civ. P. 12(c).

[7] *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016) (noting that under the rule, "[a]n insurer's potential duty to defend is 'determined *solely* by the allegations of the complaint in the [underlying] action[,]'" without reference to extrinsic evidence) (emphasis in original) (quoting *Kvaerner*, 908 A.2d at 896).

[8] *Gen. Acc. Ins. Co. of Am. v. Allen,* 692 A.2d 1089, 1095 (Pa. 1997).

[9] *Id*. Although "the duty to defend is separate from and broader than the duty to indemnify, both duties flow from a determination that the [underlying] complaint triggers coverage." *Kvaerner*, 908 A.2d at 896 n.7. Therefore, if an insurer has no duty to defend, it also has no duty to indemnify. *See id*.

[10] *Vitamin Energy, LLC v. Evanston Ins. Co.*, 22 F.4th 386, 392 (3d Cir. 2022) (internal citations omitted) (applying Pennsylvania law).

4

complaints allege facts that would support a recovery covered by the policies at issue, we will affirm the District Court's judgment.

When the tank exploded, CFSIC insured Detect under two policies, both of which were effective from May 26, 2018, to May 26, 2019:  Primary Policy EPK-122566 and Excess Policy EFX-110641.[11]  Detect added Mott as a named insured to both Policies on October 17, 2018.[12]

The Primary Policy provides coverage for Commercial General Liability (CGL), Contractor's Pollution Liability (CPL), and Errors & Omissions Liability (E&O).  The CGL and CPL exclude coverage for claims "[b]ased upon or arising out of any insured's rendering or failure to render 'professional services,'"[13]  which are expressly defined as "[a]boveground storage tank testing and inspection."[14]  The E&O will cover a claim based on a "wrongful act"—defined as an insured's "act, error, or omission in the rendering or failure to render 'professional services'"—but only if "[t]he 'wrongful act' forming the basis of the 'claim'" occurred on or after the E&O's "Retroactive Date" of May 26, 2016.[15]

Detect and Mott concede that the June 9, 2015 tank inspection was a "professional service[]" as defined by the Policies.  Nonetheless, they claim the underlying complaints allege violations of an ongoing duty of care unrelated to the 2015 inspection and thus

---

[11] The Excess Policy does not apply unless there is coverage under the Primary Policy.

[12] We assume without deciding that Mott could be entitled to coverage, even though Detect added Mott after reporting the claim to CFSIC.

[13] Appx. 0267 (CGL exclusion); *see also* Appx. 0275-76 (CPL exclusion, stating the same).

[14] Appx. 0261, 0277.  Under Pennsylvania law, the term "aboveground storage tank" includes any tank that "can be visually inspected, from the exterior, in an underground area"—like the tank that exploded at Vigilante's gas station.  25 Pa. Code. § 245.1.

[15] Appx. 0318.

outside the scope of "professional services" excluded from CGL and CPL coverage. We disagree. All allegations against Detect and Mott buttress a theory of negligence that begins and ends with the 2015 inspection. The crux of both complaints is that even though "less than satisfactory aspects [were] uncovered" at the 2015 inspection, the tank was improperly "cleared . . . to remain in service" for ten years without another inspection.[16] All of the allegations either pertain to the inspection itself or the write-up of the inspection. Accordingly, because the claims against Detect and Mott arise out of the rendering of "professional services," there is no CGL or CPL coverage.

Detect and Mott also contend that that the underlying complaints contain allegations of negligence that postdate the E&O Retroactive Date and qualify as "wrongful acts" entitling them to E&O coverage. But as explained above, all allegations against Detect and Mott relate to, begin, and end with the 2015 inspection. Because the only "wrongful act" alleged against Detect and Mott occurred in 2015, prior to the Retroactive Date of May 26, 2016, there is no E&O coverage.

Finally, Detect and Mott contend that the District Court failed to consider whether Detect—separate and apart from Mott—was entitled to coverage. They claim that because the underlying complaints pin the 2015 inspection solely on Mott, none of the exclusions discussed above preclude Detect from coverage. True, neither complaint alleges that Detect conducted or was otherwise involved in the 2015 inspection. However, both complaints allege that Detect "is the successor entity and/or purchased, subsumed,

---

[16] Appx. 0058 ¶ 51 (Vigilante Complaint); Appx. Appx. 0058 ¶¶ 63–64 (Tomasiello Complaint).

integrated, and/or is otherwise responsible for the assets and liabilities of [] Mott,"[17] and that Detect and Mott *together* were "jointly and/or severally . . . responsible for the inspection, maintenance, repair, modification, and/or alteration" of the tank when it exploded.[18] These allegations inextricably link Detect with Mott, and as a result, link Detect with the 2015 inspection that may have caused (or could have prevented) the explosion.[19] We therefore conclude that neither Detect nor Mott is entitled to coverage.

## IV. Conclusion

For the foregoing reasons, we hold that CFSIC has no duty to defend or indemnify Detect or Mott. As a result, we will affirm the District Court's order granting CFSIC's motion for judgment on the pleadings.

---

[17] Appx. 0053 ¶ 22 (Vigilante Complaint); Appx. 0178 ¶ 24 (Tomasiello Complaint).

[18] Appx. 0058 ¶ 49 (Vigilante Complaint); Appx. 0183–84 ¶ 61 (Tomasiello Complaint).

[19] At the outset of the memorandum accompanying its order entering judgment in favor of CFSIC, the District Court observed that "Detect purchased Mott in a July 21, 2017 Stock Purchase Agreement, pursuant to which Detect did not assume Mott's liabilities," citing CFSIC's Second Amended Complaint. *Crum & Forster*, 2023 WL 2588437, at *1. This observation otherwise had no bearing on the District Court's determination that CFSIC had no duty to defend. Rightfully so. Under Pennsylvania's "four corners" rule, a court may "not look outside the allegation of the underlying complaint or consider extrinsic evidence" in determining whether an insurer has a duty to defend. *Ramara*, 814 F.3d at 673 (internal citation omitted). Though CFSIC's Second Amended Complaint discusses the 2017 acquisition and appends a copy of the Stock Purchase Agreement, the underlying state court complaints say nothing about when or how Detect purportedly acquired Mott. Even though "more germane facts may have surfaced" as the state court suits progressed— including those that may distance Detect from Mott and the 2015 inspection—the District Court properly declined to consider them in its coverage analysis. *State Farm Fire & Cas. Co. v. Est. of Mehlman*, 589 F.3d 105, 108 n.3 (3d Cir. 2009) (citing *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290-91 (Pa. 2007)).